JEREMIAH F. CRONIN *vs.* HIGHLAND STREET RAILWAY
COMPANY.

Suffolk.    Nov. 10, 1886. — March 23, 1887.    HOLMES & GARDNER, JJ.,
absent.

Under the Pub. Sts. *c.* 113, § 47, providing that a commutation check issued by a
street railway company in Boston shall entitle the holder "to a passage on
the same day only in any car run by any other company between any two
points in said city, but not to a passage over the same route on which the check
was issued or a route parallel thereto and between and including two common
points," the holder of such a check, in returning towards his starting point,
is not entitled to be carried upon the check in the car of another company,
whose route is substantially parallel to the route of the company issuing the
check, and is between and includes two common points, although a. wide detour
is made at one place in the route of the latter company between the two
common points.

TORT, for being expelled from a car of the defendant cor-
poration on September 7, 1885.    The case was submitted to the
Superior Court, and, after judgment for the defendant, to this
court, on appeal, upon agreed facts, in substance as follows:

The plaintiff resides in the Charlestown District of Boston,
and has his usual place of business at No. 16 Boylston Street,
Boston.    The defendant is a corporation owning and operating
a street railway in Boston.

On September 7, 1885, at about 6.25 A. M., the plaintiff entered
a car of the Middlesex Railroad Company, a corporation also
owning and operating a street railway in Boston, on Main Street,
opposite Winthrop Street, in said Charlestown District, for the
purpose of going to his place of business.    The streets through
which said Middlesex car was run on said September 7, and
through which it and a certain number of the other cars of
said Middlesex Company were then, and are now, regularly
run every six minutes, are as follows: From Charlestown Neck,
through Main Street to City Square, through City Square to
Warren Avenue; through Warren Avenue to Warren Bridge;
over Warren Bridge to Beverly Street; through Beverly Street
to Charlestown Street; through Charlestown Street to Haymar-
ket Square; through Haymarket Square to New Washington
Street; through New Washington Street to Washington Street;

through Washington Street to Summer Street; through Summer Street to Lincoln Street; through Lincoln Street to Beach Street; through Beach Street to Federal Street; through Federal Street to Kneeland Street; through Kneeland Street (stopping to leave and receive passengers at the Old Colony and Boston and Albany stations) to Lincoln Street; through Lincoln Street to Beach Street; through Beach Street to Washington Street; through Washington Street to Boylston Street; through Boylston Street to Tremont Street; through Tremont Street to Scollay Square; through Scollay Square to Cornhill; through Cornhill to New Washington Street; through New Washington Street to Haymarket Square; through Haymarket Square to Charlestown Street; through Charlestown Street to Beverly Street; through Beverly Street to Warren Bridge; over Warren Bridge to Warren Avenue; through Warren Avenue to City Square; through City Square to Park Street; through Park Street to Warren Street; through Warren Street to Main Street; and through Main Street to Charlestown Neck.

To ride over the entire distance traversed by the car two fares of five cents each were required. A passenger could ride on a single fare of five cents to the corner of Tremont Street and Boylston Street; but it required another fare of five cents to ride back to Charlestown Neck. Soon after entering said car, the plaintiff paid the conductor of the car the sum of eight cents, and received from the conductor an eight-cent check, so called, in due form and dated the same day, and being a check of the kind referred to in the Pub. Sts. c. 113, § 47. The plaintiff left said car at the corner of Washington Street and Summer Street, and walked directly to his said place of business, No. 16 Boylston Street. He remained at No. 16 Boylston Street until shortly before 9.45 A. M., when, desiring to go to No. 17 Union Street, he left his place of business, went directly therefrom to Tremont Street, walked down Tremont Street until a car of the defendant corporation overtook him, and got upon said car on Tremont Street, between Mason Street and West Street, for the purpose of going to No. 17 Union Street, which is between North Street and Hanover Street.

The streets through which the Highland car was run on September 7, and through which it and a certain number of the

other cars of said Highland company were then, and are now, regularly run every ten minutes, are as follows: From West Roxbury Park, through Blue Hill Avenue, to Dudley Street; through Dudley Street to Hampden Street; through Hampden Street to Northampton Street; through Northampton Street to Shawmut Avenue; through Shawmut Avenue to Tremont Street; through Tremont Street to Scollay Square; through Scollay Square to Court Street; through Court Street to Hanover Street; through Hanover Street to New Washington Street; through New Washington Street to Haymarket Square; through Haymarket Square to Canal Street; through Canal Street to Causeway Street; back through Canal Street to Haymarket Square; through Haymarket Square to Sudbury Street; through Sudbury Street to Court Street; through Court Street to Scollay Square; through Scollay Square to Tremont Street; through Tremont Street to Shawmut Avenue; through Shawmut Avenue to Northampton Street; through Northampton Street to Hampden Street; through Hampden Street to Dudley Street; through Dudley Street to Blue Hill Avenue; and through Blue Hill Avenue to said West Roxbury Park.

The nearest point to No. 17 Union Street reached upon said Highland car is at the corner of Hanover Street and New Washington Street; and the shortest distance from the Highland track at that point to said No. 17 is through Hanover Street, Friend Street, and Union Street, and is four hundred and fifty-nine feet. The nearest point to said No. 17 Union Street reached upon said Middlesex car is the crossing of New Washington Street and Elm Street, and the shortest distance from the Middlesex track at that point to said No. 17 is through Elm Street and Union Street, and is four hundred and twelve feet.

After the plaintiff had got upon said Highland car, the conductor thereof demanded the plaintiff's fare; and thereupon the plaintiff tendered to the conductor said eight-cent check, which he had received from the conductor of the Middlesex car. The conductor of the Highland car refused to receive said check, and, the plaintiff refusing to pay any other fare, the conductor compelled the plaintiff to leave said car at School Street, on Tremont Street.

If the court should be of the opinion that said eight-cent check was good for the ride which the plaintiff was taking upon the

defendant's car, judgment was to be entered for the plaintiff for the sum of $150; otherwise, judgment to be entered for the defendant.

*P. J. Doherty*, for the plaintiff.

*J. Hewins*, for the defendant.

C. ALLEN, J.   It appears by a reference to the various statutes cited by the defendant, that formerly all the street railways in Boston met at or near a common central point, in what is now Scollay Square;* and the original statute providing for commutation checks, St. 1864, *c.* 229, § 27, was passed for the purpose of enabling a passenger without paying two full fares to complete his passage to a point which could not be reached in the car in which he started.   The statutes concerning street railways were revised in 1871, and consolidated into a general act, St. 1871, *c.* 381, and by § 36 it was provided that a passenger who paid for a commutation check should receive a check which should entitle him to a passage, on the same day only, in any car run in Boston by any other corporation between any two points therein.   This of course would not enable a passenger to get two rides upon different cars of the same company, and the purpose does not appear to have been different from that of the St. of 1864, *c.* 229, § 27.   But as the locations of street railways were extended and multiplied, the provision was found to be so broad as to be subject to abuses, and an amendment was made by the St. of 1878, *c.* 204, which provided that the St. of 1871, *c.* 381, § 36, should not be construed to require a commutation check to be issued or received " for a passage upon a car run over the same route with that on which such check was issued, or over a route parallel thereto and between or including two common points."   These two sections are now incorporated into the Pub. Sts. *c.* 113, § 47.   The abuse which the amendment of 1878 was intended to prevent appears to have been the obtaining by a passenger of what would amount substantially to a return trip, by using a car of another company, at a lower rate than he could do it upon a car of the company which issued the check.   The statute is to be construed with reference to the well-known usage to require one fare for a trip to the end of

---

* See Sts. 1853, *c.* 353; 1854, *cc.* 434, 444, 445; 1857, *cc.* 216, 285; 1859, *cc.* 202, 205; 1860, *c.* 207; 1861, *c.* 188; 1862, *cc.* 191, 192; 1864, *c.* 75.

the company's line, and another fare for the return trip. A passenger could not take the return trip upon the same company's line by means of a commutation check, because the statute expressly limited him to a car run by another company. But if another company happened to run cars over a line which would enable a passenger to make what would amount substantially to a return trip therein, he might, until the passage of the St. of 1878, *c.* 204, have done this, upon a commutation check. The Legislature did not intend to give to a passenger the benefit of two trips at a reduced rate, both of which might either wholly or substantially be made upon the line of the same company; but to enable him, at the reduced rate, to reach his point of destination beyond the route of the first company, and when two lines must be used for that purpose.

Such being the obvious design of the Legislature, it is to be considered whether the phraseology of the statute is such as to give to the plaintiff in the present case the right for which he contends, and whether he comes within the limitation that he shall not be entitled " to a passage over the same route on which the check was issued, or a route parallel thereto, and between and including two common points."

The plaintiff contends that " the same route " means a passage in one direction only, for which the passenger is carried for one fare; and that, in his case, this means the route from Charlestown to the corner of Boylston Street and Tremont Street in Boston, following the course taken by the cars of the Middlesex company in making what may be called the inward trip from Charlestown to Boston; while the defendant contends that " the same route " means the whole route traversed in an inward and outward trip, from Charlestown to Boston and then back to Charlestown again. This difference is considered important by the respective counsel, because it is easier to say that the route of the defendant's car was parallel to the outward trip of the Middlesex company's car, from Boston to Charlestown, than that it was parallel to the inward trip. Indeed, we do not understand that the counsel for the plaintiff goes so far as seriously to contend that the routes of the two companies from the point at the corner of Boylston Street and Tremont Street to the point at the corner of Hanover Street and New Washington

Street, these being two common points, are not to be deemed either the same route or routes parallel to each other. For much the greater portion of the way, they are the same; and when they separate, at Scollay Square, they soon come together again. The plaintiff had started from his place of business on Boylston Street, via Tremont Street, for No. 17 Union Street. The car of the defendant passed along Tremont Street, by Boylston Street, and the point which it reached nearest to the plaintiff's destination was at the corner of Hanover Street and New Washington Street. The plaintiff, according to the statement in his counsel's brief, intended to ride in the defendant's car to that point. The car did not come along until he had walked a short distance on Tremont Street; but the route of the car which he took was between and included two common points, and was substantially the same as the return route of the Middlesex company's cars, and the intended trip of the plaintiff was in substance a return trip to the point of his destination, he having passed that point on his inward trip.

Giving a reasonable and practical construction to the statute, and having regard to the obvious intention of the Legislature, the route of the defendant's car along Tremont Street to the common point at the junction of Hanover Street and New Washington Street must be deemed to be parallel to the inward route of the Middlesex company. Exact parallelism is not contemplated, and, having reference to the streets of Boston, a somewhat liberal construction must necessarily be adopted. It is not necessary that the two routes should be parallel for the whole length of each, or of either, in order to fall within the meaning of the statute. So strict a construction would leave few, if any, cases in which the limitation would have effect. If the route on which the passenger purposes to travel is substantially parallel to that on which he received his check, and if it is between and includes two common points, it is enough. He is not entitled to be carried over such a route. So far as his contemplated trip is concerned, it is a parallel route; and his trip back in the direction from which he came is substantially a return trip.

It is not a material consideration that the inward route of the Middlesex company, on reaching the corner of Washington Street and Summer Street, makes a wide divergence, in order to

reach and pass the stations of the Old Colony Railroad and the Boston and Albany Railroad, and that its course is quite circuitous until it reaches Boylston Street. If the Old Colony Railroad station were treated as the end of the inward route of the Middlesex company, the whole of its inward and outward routes would be substantially parallel to each other, except indeed where they are identical. The inward route, however, for which only one fare is required, continues to the corner of Boylston Street and Tremont Street, and thus includes a portion of the return trip from the farthest point reached. It is urged that the route of the defendant cannot be considered as parallel with any part of the route traversed by the cars of the Middlesex company in going from the corner of Washington Street .and Summer Street to the corner of Tremont Street and Boylston Street. But clearly, if the route of the Middlesex company continued along Washington Street to Boylston Street, and thence to Tremont Street, omitting the detour, there would be no difficulty in treating the defendant's route as parallel. So if it continued along Washington Street to Essex Street, which is almost opposite to Boylston Street, and made the detour through Essex Street to Lincoln Street, and continued thence as it does at present, coming back in Washington Street almost to the very point where it diverged therefrom, the fact of its making this circuit, almost a loop, would not require a different construction. The route from Washington Street to the Old Colony station and back again to Washington Street would be still more closely parallel to itself than it now is. The point of divergence, according to the present route, is at Summer Street, a little farther back; and accordingly, for the space between Summer Street and Boylston Street, the defendant's route on Tremont Street could hardly be considered as parallel, if this space alone were to be considered; but taking the whole of the route together, and looking at the question practically, the fact that a somewhat wide detour is made at one place by one of two routes between two common points does not render it impossible to consider and call the two routes parallel to each other, by a use of language which is appropriate to the description of street railway routes in Boston. It is probable that in the description of steam railway routes in mountainous regions an equal freedom of

construction would be both proper and necessary. For much the larger portion of the defendant's route between the two common points, it is closely parallel to the inward route of the Middlesex company. The detour made by the latter company, after carrying passengers to a point which, according to the shortest course, is near to the end of the inward trip, may be disregarded. The language of the statute might perhaps have been more clearly expressed, but its purpose is sufficiently plain, and the plaintiff's case falls within the limitation which was fairly and reasonably intended to be put upon the use of commutation checks.

*Judgment affirmed.*