v. Brewster, 124 N. Y. 433, 26 N. E. 1024; Emmett v. Penoyer, 151 N. Y. 564, 45 N. E. 1041; Barker v. Bradley, 42 N. Y. 316.

In this case it happens that the consideration agreed upon by the parties, and subsequently fully performed, was not a sum of money, but an agreement for the performance of services and the expenditure of money in advertising, soliciting trade, etc. I see no reason why any different rule should prevail. In each case the written contract is defective, in that it fails to express the consideration; and there is no more reason in the one case than in the other why parol proof should be admitted to supply the defect.

The demurrer should be overruled, with costs, to be taxed. The plaintiff should have the right to reply within 20 days after notice of entry of interlocutory judgment, upon payment of costs.

---

(119 App. Div. 223)

### KELLY v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Division, First Department. May 24, 1907.)

CARRIERS—STREET RAILROADS—TRANSFERS—CHANGE OF DIRECTION.

    Railroad Law, Laws 1892, p. 1406, c. 676, § 104, requires every street railroad company to carry, between any two points on the roads over which it has the right to run cars, any passenger desiring to make one continuous trip between such points for one single fare and without extra charge, and to give the passenger a transfer entitling him to a continuous trip to any point on such road, for the promotion of public convenience. *Held*, that such section did not prevent a street railway company from adopting a regulation requiring passengers making use of transfers to use the same only in the same general direction of their initial trip.

    [Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 1060–1062.]

    McLaughlin and Scott, JJ., dissenting.

Appeal from Appellate Term.

Action by Peter C. Kelly against the New York City Railway Company. From an order of the Appellate Term (102 N. Y. Supp. 742), reversing a judgment in favor of defendant in an action to recover a penalty for defendant's failure to receive a transfer under Railroad Law, Laws 1892, p. 2107, c. 565, § 104, defendant appeals. Reversed and remanded.

    The plaintiff boarded a south-bound car of the defendant on Third avenue at Bayard street, paid a fare of five cents, and was given a transfer to a Chambers Street car going in a westerly direction. This transfer was shown to the conductor of the Chambers Street car and retained by the plaintiff, who changed to a north-bound Greenwich Street car, his destination being Greenwich and Leonard streets. The conductor of the Greenwich Street car, under a rule of the defendant, refused to honor this transfer, going in a reverse direction from that in which the plaintiff had started, and the latter was obliged to pay a second fare. This action is brought to recover the penalty of $50 prescribed by section 104 of the railroad law (Laws 1892, p. 2107, c. 565), and the broad question presented upon this appeal is whether the rule or regulation of the defendant, requiring passengers to make use of transfers only in the same general direction of their initial trip, is a reasonable regulation, and consistent with the terms of the statute here under consideration. The learned Municipal Court held that this rule was a reasonable one, relieving

the defendant of the penalty prescribed, and the Appellate Term has reversed
that judgment. The appeal by permission comes to this court.

Argued before PATTERSON, P. J., and McLAUGHLIN,
HOUGHTON, SCOTT, and LAMBERT, JJ.

Paul D. Cravath and James L. Quackenbush, for appellant.
Paul M. Pelletreau, for respondent.
Joseph G. Williamson, Jr., E. V. R. Ketchum, and John Loew,
for parties intervening.

LAMBERT, J. Section 4, par. 8, of the railroad law (Laws 1890,
p. 1084, c. 565), provides that a corporation shall have power "to
regulate the time and manner in which passengers and property shall
be transported, and the compensation to be paid therefor." This
power must be exercised in subordination to the law and within rea-
sonable limitations. There came a time in the history of the trans-
portation facilities of the state when it was deemed wise and bene-
ficial to the public to permit of the consolidation of street surface
railroads, by lease or otherwise, and to preserve the rights of the
public, under the increased powers of these corporations, it was
provided by section 104 of the railroad law as follows:

"Every such corporation entering into such contract shall carry, or permit
any other party thereto to carry, between any two points on the railroads or
portions thereof embraced in such contract any passenger desiring to make one
continuous trip between such points, for one single fare, not higher than the
fare lawfully chargeable by either of such corporations for an adult passen-
ger. Every such corporation shall upon demand, and without extra charge,
give to each passenger paying one single fare a transfer, entitling such pas-
senger to one continuous trip to any point or portion of any railroad embraced
in such contract, to the end that the public convenience may be promoted by
the operation of the railroads embraced in such contract substantially as a
single railroad with a single fare. For every refusal to comply with the re-
quirements of this section the corporation so refusing shall forfeit fifty dol-
lars to the aggrieved party. The provisions of this act shall only apply to
railroads wholly within the limits of any one incorporated city or village."

The law reads into all statutes and all contracts the element of good
faith (Industrial & G. T., Ltd., v. Todd, 180 N. Y. 215, 225, 226, 73
N. E. 7. It was conceded upon the argument that there is no con-
trolling decision upon the exact question here presented. We are,
therefore, to determine by the application of known rules the proper
construction of the statute, and the limitations which it imposes upon
the defendant in the case now before us. The lawmaking power had
in contemplation in the passage of the act in question the practical
efficiency of the means of transportation. The design was to permit
a passenger to proceed along the line of connecting surface railroads,
so that he might reach his point of destination with the greatest prac-
tical ease and economy. It was "to the end that the public convenience
may be promoted" that this provision was inserted, and the public
convenience requires of all street surface railroads, not only that they
shall deliver each passenger at the termination of his journey, no
matter how circuitous the route may be, but that such passenger
shall be carried by the most direct and practical route to the nearest
point to which he desires to go; regard being had to his purpose and

convenience. Suppose, for instance, that we are at Union Square, and desire to go to the Fifth Avenue Hotel, opposite Madison Square. The Broadway cars will take us directly past the hotel by traveling a few blocks, and every consideration of public convenience is served by that line. But we could take a Fourth Avenue car to Forty-Second street, thence by another car to Broadway, and down Broadway to the Fifth Avenue Hotel, thus making a circuitous route. If the plaintiff's construction of the statute is right, this suppositious case could be complicated by a great variety of transfers. This does not embrace any element of public convenience. It would be merely an indulgence of an individual desire to ride, rather than a purpose "to make one continuous trip between such points." The trip, whatever we may say of its continuity, would not be "between such points," but would be outside of them. It would not be an evidence of good faith on the part of a passenger, to which a public corporation is entitled; and this has been held by the courts of this state. An individual may have the time to work out and indulge in these freakish trips; but the public has no interest in them, and that was the purpose of the Legislature in giving the right to enforce a private remedy, to the end that the "public convenience may be promoted by the operation of the railroads embraced in such contract substantially as a single railroad with a single rate of fare." The public convenience, not the indulgence of individual caprice, is to be served, and this is to be accomplished, or "promoted" (to use the language of the statute), "by the operation of the railroads * * * substantially as a single railroad with a single rate of fare."

What is necessary, then, to the operation of these railroads substantially as a single railroad? This question has been judicially answered in principle in the case of Bennett v. N. Y. C. & H. R. R. R. Co., 69 N. Y. 594, 25 Am. Rep. 250. In that case the plaintiff bought a ticket from Lockport to Troy. No route was indicated. The railroad operated two lines between Rochester and Syracuse. One of them, a direct line over which it habitually operated its regular through trains, was 81 miles long; and the other was 104 miles. The plaintiff left the through train at Rochester, and took a train over the older and longer route by way of Auburn. After leaving Auburn the conductor demanded an extra fare, and on the plaintiff refusing to pay more he was ejected from the car, and brought his action to recover damages. He was nonsuited upon the trial, and the judgment was affirmed by the General Term and the Court of Appeals. In discussing the contract of the carrier the court say:

"It seems to me that it was a contract to carry the plaintiff over the usual, through, and most direct route, and nothing more. The defendant is restricted to a charge of two cents a mile. It does not appear that the plaintiff paid any more than that sum for the 81 miles over the usual route. The through train from Lockport passes over the direct route, and the plaintiff must have changed cars at Rochester and taken another train. He may have supposed that the ticket entitled him to go by any road which the defendant owned, however indirect, and regardless of the distance traveled. In this I think he was mistaken. The ticket was a through ticket, and impliedly over the through route. The company was not bound to take him over any and all of their roads which might terminate at the same point. A ticket from Al-

bany to Buffalo would not entitle the holder to go by way of Niagara Falls. although the company owns the road all the way round, and I do not see why the company would not be liable to a penalty for charging by way of the Falls for a ticket to Buffalo, unless on notice."

And, continuing:

"I am of opinion that it was a contract to carry the plaintiff over the direct route, and not one to carry him over an unusual, roundabout way, 23 miles farther."

Is there any difference in a contract where a passenger buys a ticket between two named points, and a contract growing out of the payment of a single fare upon a street surface railroad pursuant to statute? Is not the contract implied that the company will carry the passenger from the point where he comes on board to the nearest practical point upon its lines to the proposed destination of the passenger by the shortest and most direct route and not by some fanciful, roundabout way? To our mind the inquiry carries its own answer. A careful examination of the maps in evidence, in connection with the scheme of transfers as it was ·developed upon the trial, shows that a passenger might, by traveling in the same general direction, by means of crosstown lines, reach within a few blocks almost any point within the territory which the defendant attempts to cover, and for a single fare; and, as this is all that a "single railroad with a single rate of fare" under the laws of this state is expected to do, it cannot be said that any purpose of section 104 of the railroad law is being defeated by the rule which accomplishes the result mentioned. And it cannot be doubted that the system of transfers now in force does operate to accomplish this purpose, or that this system is in harmony with the power to "regulate the time and manner in which passengers and property shall be transported." As was stated in Bennett v. N. Y. C. & H. R. R. Co., 5 Hun, 599:

"There was nothing unreasonable, therefore, in requiring him to pay more, for the reason that the defendants were rendering him more service than was necessary for them to do in order to fulfill the contract to carry him from Rochester to Troy."

In Wimmer v. Union Traction Company, 12 Pa. Super. Ct. 467, the city had, in granting the franchise to the defendant, provided that "the said railway company shall run cars over their entire line at intervals not exceeding five minutes," and that the "rate of fare to be charged for a single continuous ride over the entire line shall not exceed the present fare," etc. The line operated appears to have been a loop. The plaintiff entered a car going west several blocks distant from the turning point and paid his fare. He remained upon the car until it rounded the loop, going east in the direction he desired to travel, and, the second fare being demanded, he refused to pay, and was ejected from the car, bringing an action for damages. The plaintiff took the grounds, asserted in substance by the plaintiff in the case at bar, that he had the legal right under the provisions of the ordinance to enter the car at the terminus at Forty-First and Market streets, and remain therein until the car made its circuit and returned practically to its starting point. The court did not decide the precise point here under

consideration, but held that the plaintiff was properly ejected, and reversed the court below, which had held the plaintiff's view of the case. In Church v. Ohio, M. & St. P. R. Co., 60 N. W. 854, 6 S. D. 235, 26 L. R. A. 616, the Supreme Court on appeal held that it was a reasonable regulation for a company, operating a direct, indirect, and circuitous lines of roads between two points, to require that through passengers traveling upon a simple contract to carry them from one point to another should go by the most direct route. See, also, 6 Cyc. 581; 26 Am. & Eng. Ency. of Law, 184.

This rule is so in accord with proper ideals of justice that it appeals at once to the judicial mind, and, when we recollect the obligation of the individual to deal in good faith with those acting under the law, it becomes plain that the plaintiff in this action has no right to recover; for the defendant has not been guilty of a statutory wrong against which the remedy was directed. While the refusal of a transfer is the overt act upon which the cause of action depends, it is the violation of the duty to the public which the law seeks to reach, and if there is no violation of that duty then the defendant had a right to refuse the transfer. The duty of the corporation is to carry, not beyond and back to the point by a circuitous route, but "between any two points on the railroads or portions thereof embraced in such contract any passenger desiring to make one continuous trip between such points," not for the gratification or whim of the idle or curious person, but "to the end that the public convenience may be promoted by the operation of the roads embraced in such contract, substantially as a single railroad with a single rate of fare." The law contemplates that a passenger upon a street railroad, like a passenger upon any ordinary railroad, wants to go somewhere as a practical matter—that he has a purpose in going to some given place. The powers given to railroad corporations and the duties which they assume are predicated upon transportation facilities as practical utilities, and when in section 104 of the railroad law it was provided that a passenger "desiring to make one continuous trip between such points" should be permitted to do so for a single fare, it was understood that the passenger desired to make use of the means of transportation afforded under reasonable rules and regulations to accomplish this purpose in a practical way. A trip is defined by the Century Dictionary, in its relation to transportation, to be the "performance of service one way over a route, the performance of service both ways being a round trip"; and under the scheme of transfers provided for by the defendant a person desiring to make a continuous trip—a trip one way—is provided an entirely practical and efficient means of reaching any part of the city of New York for a single fare of five cents, and this is a full compliance with the purposes sought to be accomplished by section 104 of the railroad law. The defendant, while fulfilling its duty under the statute, cannot be guilty of such a refusal of a transfer as to entail the penalty prescribed.

The determination appealed from should be reversed, and the judgment of the trial court affirmed, with costs in all courts.

PATTERSON, P. J., and HOUGHTON, J., concur.

McLAUGHLIN, J. (dissenting). This action was brought in the Municipal Court of the City of New York to recover a penalty of $50 for defendant's refusal to give a transfer provided for in section 104 of the railroad law (chapter 565, p. 1114, Laws 1890, as amended by chapter 676, p. 1406, Laws 1892). The defendant had a judgment dismissing the complaint, with costs, from which an appeal was taken to the Appellate Term, where the same was reversed, and judgment directed for the plaintiff, and from such determination the defendant appeals to this court.

There is no dispute as to the material facts involved; the question presented being one of law. The plaintiff boarded one of defendant's south-bound cars at Third avenue and Bayard street, for the purpose of going to West Broadway and Leonard street. Both these points are between defendant's cross-town lines on Canal and Chambers streets. The plaintiff was given a transfer for, and which he used, on the Chambers Street line; but, when he transferred at Chambers street and West Broadway to a north-bound car on the latter street (which it was necessary for him to take in traveling on defendant's car to reach the point to which he desired to go), he was compelled to pay another fare, the conductor refusing to recognize or accept the transfer which had previously been given to him. If the conductor were justified in refusing to accept such transfer, then the determination appealed from is erroneous, and must be reversed; otherwise, it must be affirmed. The solution of the question turns upon the construction to be put upon section 104 of the railroad law above referred to. This section provides that:

"Every such corporation entering into such contract shall carry or permit any other party thereto to carry, between any two points on the railroads or portions thereof embraced in such contract, any passenger desiring to make one continuous trip between such points for one single fare not higher than the fare lawfully chargeable by either of such corporations for an adult passenger. Every such corporation shall, upon demand and without extra charge, give to each passenger paying one single fare a transfer entitling such passenger to one continuous trip to any point or portion of any railroad embraced in such contract, to the end that the public convenience may be promoted by the operation of the railroads embraced in such contract substantially as a single railroad with a single rate of fare. * * *"

The rule to be applied in construing a statute is that the words used must be given their ordinary and natural meaning—that is, the meaning in which they are generally understood—and if, after applying such rule, there is conveyed a definite meaning, which does not involve an absurdity or contradiction, then the court has no right to add to or take from that meaning by arbitrary rules of construction, or by the elimination of words used or the insertion of those not used. Tomkins v. Hunter, 149 N. Y. 117, 43 N. E. 532. This rule has for its foundation the fact that it is always competent for the Legislature, within the limits of the Constitution, to enact a statute, and, when the same is brought under judicial review, it is safer for the judicial department of the government to follow the plain intent and obvious meaning of an act, rather than a speculate what might have been the view of the Legislature in the emergency which may have arisen (People v. Wood-

ruff, 32 N. Y. 355), and that the court has no right to disregard the plain words of a statute, even in favor of what may be an equitable construction, in order to extend it to some supposed policy not included in the act (Karst v. Gane, 136 N. Y. 316, 32 N. E. 1073).

Applying this rule to the statute under consideration, I am of the opinion that the determination of the Appellate Term is correct, and should be affirmed. The legislative intent is apparent and unmistakable, and it is the duty of the court to give effect to it. It is that each passenger paying a single fare shall, upon demand, be given a transfer entitling him to one continuous trip to any point on defendant's lines. There is not a word used which indicates that the trip for which a transfer is to be given shall be substantially in one direction, or that it shall not be partly in one and partly in an opposite direction. The object sought to be accomplished is the convenience of the public. The statute so declares, and it does not require argument to demonstrate that this convenience may be promoted just as effectively by transfers which may be used on a trip partly in a reverse direction as it would entirely in one direction. A large portion of the population in the city of New York resides on either side of Central Park, which extends from Fifty-Ninth to 110th street, and the only car line which the defendant has running through such park is at Eighty-Sixth street, so that there is no way by which persons residing on either side of such park can get to the other side, if they live north or south of Eighty-Sixth street, traveling by defendant's railway, except by going partly in one direction and then partly in a reverse direction. Thus, if A. lives at Seventy-Ninth street and Broadway, and desires to go to Seventy-Ninth street and Madison avenue, he must take a car and go south, then transfer east and go north, or else take a car and go north, transfer east and go south; and to say that he is not entitled to such transfer is to nullify the statute, by destroying the very object sought to be accomplished by it. It may be that requiring such transfers to be given would entail additional expense upon the defendant, but this is no reason why the statute should not be enforced; and it may also be possible that it would be difficult to formulate a system or promulgate rules which would prevent the defendant being imposed upon, but, if so, this is no reason why the court should not give effect to the statute. If its enforcement will produce the results claimed by the defendant, then it should be changed; but such change should be made by the Legislature, and not by the court.

We have recently held (Nicholson v. New York City Railway Co. [App. Div.] 103 N. Y. Supp. 695) that, to be entitled to a transfer, the passenger must in good faith desire to make one continuous trip between two points on defendant's line. There is nothing in this record to show, nor is it even suggested, but what the plaintiff, at the time the transfer was refused, demanded the same in good faith, for the purpose of going to the place specified. There was, therefore, no excuse on the part of the defendant, acting through its conductor, for refusing to give the transfer demanded; and, this being so, if the foregoing conclusions be correct as to the construction of the statute, the plaintiff became entitled to the penalty sued for.

Much stress is laid by defendant's counsel upon Cronin v. Highland Street Railway Co., 144 Mass. 249, 10 N. E. 833, as supporting their contention. This case was decided in 1887, under an amendment to the statute which went into effect in 1878. Pub. St. 1882, c. 113, § 47. Prior to the amendment the statute provided, in substance, that a passenger on one line, paying his fare and receiving a commutation ticket, should be permitted to travel to any point on a connecting line without paying extra fare. The amendment referred to, however, provided that for a single fare a passenger was not entitled "to a passage over the same route on which the check was issued, or a route parallel thereto and between and including two common points." Obviously, under the amendment, a passenger would not be entitled to a transfer entitling him to travel in a reverse direction. This was the purpose of the amendment, and it was under the statute as amended that the decision relied upon was made. If section 104 of our own statute contained a similar provision, then the defendant might well contend that a passenger could not rightfully claim a transfer entitling him to travel in a reverse direction; but, so long as the statute remains in its present form, I am unable to see, for the reasons already given, why a passenger, desiring in good faith to make one continuous trip between two points on defendant's line, is not entitled to a transfer between those points, even though it involves traveling in a reverse direction.

I am unable, therefore, to concur in the prevailing opinion, and vote to affirm the determination of the Appellate Term.

SCOTT, J., concurs.