## In re RECEIVERSHIPS OF STREET RYS.

(Circuit Court, S. D. New York. March 31, 1908.)

STREET RAILROADS—RECEIVERS—ISSUING TRANSFERS TO PASSENGERS.

Receivers operating street railroad lines being trustees for the owners and creditors, it is their duty to curtail transfer privileges of passengers, where it will increase the earnings of the property and there is no law of the state requiring the issuing of such transfers.

Masten & Nichols, for receivers.

LACOMBE, Circuit Judge. The receiver of the Third Avenue Railroad, of the Forty-Second Street, Manhattanville & St. Nicholas Avenue Railway, and of the Dry Dock, East Broadway & Battery Railroad, and the receivers of the New York City Railway and Metropolitan Street Railway have applied to the court for instructions as to the discontinuance of certain transfers. The subject may be considered in two aspects: (1) As a business proposition; and (2) as a legal proposition.

1. As a business proposition: It is sufficient to refer to the detailed statement of conditions set forth in the petitions submitted on this application. It is obvious that a curtailment of transfer privileges in the manner suggested will increase the cash receipts of the properties affected, and, since receivers are trustees for the creditors and owners, their duty to operate the roads so as to increase earnings is equally obvious.

2. As a legal proposition: The obligation of street railroads to issue transfers is found in section 104 of the present railroad law of this state (Laws 1892, p. 1406, c. 676), which is a re-enactment of section 4 of the transfer act of 1885 (chapter 305, p. 526, Laws 1885), and in its present form reads as follows:

"Sec. 104. Every such corporation entering into such contract [i. e., a contract by two or more companies for the use of their respective roads or routes or any part thereof] shall carry or permit any other party thereto to carry between any two points on the railroads or portions thereof embraced in such contract any passenger desiring to make one continuous trip between such points for one single fare, not higher than the fare lawfully chargeable by either of such corporations for an adult passenger. Every such corporation shall, upon demand, give to each passenger paying one single fare a transfer entitling such passenger to one continuous trip to any point or portion of any railroad embraced in such contract to the end that the public convenience may be promoted by the operation of the railroads embraced in such contract substantially as a single road with a single rate of fare. For every refusal to comply with the requirements of this section the corporation so refusing shall forfeit fifty dollars to the aggrieved party."

It will be seen that under the terms of this section a street railroad which carries passengers in its cars over a portion of track operated by itself and another road under an agreement for joint or common use thereof is required to give such passengers (if they so desire) transfers to the cars of that other road which are there operated and such transfers shall entitle such passengers to a continuous ride to destination on such other road. The same statute also provides:

"Sec. 102. Any street surface railroad company may use the tracks of another street surface railroad company for a distance not exceeding one thousand feet."

There have been many decisions of the state courts construing these transfer statutes, some of them conflicting; but touching the particular questions which are raised by the application now made neither the statute nor the decisions present any difficulties. It has been held by the state courts that the mere ownership by one road of a majority of the stock of another road having a separate and distinct

management does not require the exchange of transfers between the two roads. Senior v. N. Y. City Railway, 111 App. Div. 39, 97 N. Y. Supp. 645; Id., 187 N. Y. 559, 80 N. E. 1120.

A single receiver now operates the three independent roads, Third Avenue, Forty-Second Street, and Dry Dock, which are thus subject to a common control; but he proposes to continue the exchange of transfers between them as a business proposition, to build up or restore the Third Avenue system. The only matter for consideration, therefore, is the exchange of transfers between each of these three independent roads and the roads operated by receivers of the Metropolitan and New York City Railway.

The Third Avenue Railroad consists of the original line through Park Row, Chatham street, the Bowery, and Third avenue, and also its leased, branch, or controlled lines, viz., One Hundred and Twenty-Fifth Street Crosstown, Amsterdam Avenue, north of 125th street, and Kingsbridge lines. Its cars are operated wholly on these lines (or on the lines of Forty-Second Street or Dry Dock). None of them are operated on any portion of the Metropolitan lines, and none of the Metropolitan cars are operated on any of the above enumerated Third Avenue lines. Neither uses the road or route of the other, or any portion thereof. Obviously there is no obligation under the statute to exchange transfers between the Third Avenue lines and the Metropolitan or City Railway lines.

On the route of the Forty-Second Street, Manhattanville & St. Nicholas Avenue Railway there is a common operation (with Metropolitan lines) of these two portions of track: (a) Seventh avenue from Forty-Second street to Forty-Fifth street; (b) Forty-Second street, from Fourth avenue to Madison avenue. Each of these portions is less than 1,000 feet in length, and the use of the tracks is under section 102 of the statute above quoted, not by a contract for common use. Manifestly to such a statutory use the transfer section (104) does not apply. The Forty-Second Street road and the Metropolitan also operate cars in Thirty-Fourth street, from First avenue to the East river. But each road has and uses its own tracks, so the transfer section does not apply. Moreover, the distance is less than 1,000 feet. The same roads also operate cars on Forty-Second street, from Tenth avenue to the North river; but each road has and uses its own tracks, so the transfer section does not apply.

The same roads, Forty-Second Street and Metropolitan, also use in common that portion of the old Ninth Avenue line which runs on the Boulevard from Sixty-Fifth street to Seventy-First street. Whether the arrangements under which there is a common or joint use of these tracks constitute such a contract as the transfer sections refers to is an open question. No state decision, to which attention has been called, or which the court has been able to find, determines it squarely. It would seem wiser to avoid making any changes which might involve litigation over refusals of transfers until further decisions of the state courts construing the statute, or possibly some modifications in operations of the roads may leave the question no longer an open one. For the present transfers north-

161 F.—56

bound and south-bound should be exchanged between the roads on that portion of the line; the transfer given on a car of the one road to be accepted by a car of the other bound in the same direction (Kelly v. N. Y. City Railway, 119 App. Div. 223, 104 N. Y. Supp. 561) at any point the passenger may board it, between Sixty-Fifth street and Seventy-First street, under existing regulations as to time of presentation. The same roads also use in common that portion of the First Avenue line which lies between Thirty-Fourth street and Forty-Second street. The situation here is the same as in the portion of the Boulevard last referred to, and transfers should be similarly exchanged. A like state of affairs exists on Tenth avenue between Forty-Second street and Fifty-Ninth street, and transfers should be exchanged there, as in the two cases last referred to.

With the exceptions above indicated, there seems to be no reason why the receivers should not discontinue all exchange of transfers between the Forty-Second Street, Boulevard, and St. Nicholas Avenue lines and the lines of the Metropolitan Street Railway and New York City Railway.

As to the Dry Dock, East Broadway and Battery Railroad there appear to be so many places where it and the Metropolitan lines use portions of each other's tracks, exceeding 1,000 feet in length, that it seems inadvisable for receivers to undertake to make any changes now. Possibly future modifications in operation of the line or subsequent decisions of the state courts may eliminate enough of these "uses in common" to leave a less complicated situation. For the present there should be no change in existing transfer arrangements between these two roads.

None of the changes which the receivers may make under authority of this opinion shall take effect until April 11, 1908, and one week's notice of proposed changes should be posted in all cars operated within the territory affected thereby.