PETER C. KELLY, Appellant, *v.* NEW YORK CITY RAILWAY COMPANY, Respondent.

1. RAILROADS — TRANSFERS ON STREET SURFACE RAILROADS — RULE PREVENTING PASSENGERS FROM REVERSING DIRECTION OF TRIP, WITHOUT PAYING ANOTHER FARE, REASONABLE AND NOT IN CONTRAVENTION OF SECTION 104 OF RAILROAD LAW. The provision of section 104 of the Railroad Law (L. 1890, ch. 565, amd. L. 1892, ch. 676), requiring every street railway corporation which has contracted for the lease or consolidation of other roads, to give upon demand, without extra charge, " to each passenger paying one single fare, a transfer, entitling such passenger to one continuous trip to any point or portion of any railroad embraced in such contract," does not operate to prevent such a corporation from regulating by any reasonable limitation the carriage of a passenger upon its lines for a single fare. In the exercise of the power conferred by subdivision 8 of section 4 of the Railroad Law, " to regulate the time and manner in which passengers and property shall be transported and the compensation to be paid therefor," such a corporation has the right to promulgate a rule, which, in effect, prevents a passenger from reversing the direction of his trip on its railroad system without paying another fare. A regulation which limits the privilege of traveling upon the car lines of such a corporation, for one fare, to a continuous trip in one direction so that a passenger may ride on any intersecting cross-town line and on any longitudinal line reached thereby is reasonable and not in contravention of the statute.

2. SAME. A contention that, by force of the provisions of such statute, no limitation can be imposed upon the right of transfer, and that a transfer ticket must be available in any direction according to the desire or whim of the holder, cannot be sustained, since it finds no just support in a fair reading of the statute. The statute should be construed in the light

of the habitual method of railroad transportation of passengers, which is to require one fare for a trip upon its line and another fare for a return trip, and not in such a way as to enable a passenger to accomplish a round trip for a single fare.

*Kelly* v. *New York City Ry. Co.,* 119 App. Div. 223, affirmed.

(Argued April 8, 1908; decided April 24, 1908.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered May 24, 1907, which reversed an order of the Appellate Term reversing a judgment in favor of defendant entered upon a decision of the Municipal Court of the city of New York.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Paul M. Pelletreau* and *David J. Wagner* for appellant. No limit direction can be inferred from section 104 of the Railroad Law. (*Wells* v. *N. Y. City Ry. Co.,* 122 App. Div. 488; *Jenkins* v. *B. H. R. R. Co.,* 29 App. Div. 11.) The language of this statute is so plain and clear as to exclude any question of construction. (*Levine* v. *Nassau Ry. Co.,* 50 Misc. Rep. 552; *Tomkins* v. *Hunter,* 149 N. Y. 117; *Lee* v. *Dill,* 41 N. Y. 619; *Matter of Manning,* 71 Hun, 236; *Jenkins* v. *B. H. R. R. Co.,* 29 App. Div. 8.)

*Joseph G. Williamson, Jr.,* and *Fullerton Wells* for parties intervening. Plaintiff could reach his destination only by traveling in a southerly, westerly and northerly, or a northerly, westerly and southerly direction, and, therefore, was entitled to make his trip for a single fare. (*Jenkins* v. *B. H. R. R. Co.,* 29 App. Div. 8.) No direction limitation is found in sections 101 or 104 of the Railroad Law, nor can such a limitation be inferred therefrom. (*O'Reilly* v. *B. H. R. R. Co.,* 95 App. Div. 253; *Wells* v. *N. Y. City Ry. Co.,* 122 App. Div. 488.) The defendant cannot, by an arbitrary rule, deprive the traveling public of its absolute right to a transfer in an opposite direction for a single fare given it under the statute. (*Mendoza* v. *M. S. Ry. Co.,* 48 App. Div. 65;

*Lewis* v. *N. Y. C. R. R. Co.*, 99 N Y. Supp. 462; *Topham* v. *I. S. R. R. Co.*, 42 Misc Rep. 503; *Scudder* v. *I. S. R. R. Co.*, 179 N. Y. Supp. 439.)

*James L. Quackenbush, Paul D. Cravath* and *Henry J. Smith* for respondent.  The statute is to be construed with reference to the well-known usage to require one fare for a trip to the end of the company's line and another fare for a return trip.  . (*Cronin* v. *Highland Street Railway*, 144 Mass. 249; *Brown* v. *I. R. T. Co.*, 107 N. Y. Supp. 629; *Wimmer* v. *Union Traction Co.*, 12 Penn. Super. Ct. 467; *State* v. *Vanderbilt*, 37 Ohio, 590; *People* v. *O'Brien*, 111 N. Y. 1; *People* v. *Boston, etc., Co.*, 12 Abb. [N. C.] 230; *People ex rel. Collins* v. *Spicer*, 99 N. Y. 225; *People ex rel. Savings Bank* v. *Butler*, 147 N. Y. 164; *Gasper* v. *N. Y. City Ry. Co.*, 99 N. Y. Supp. 902; *Senior* v. *N. Y. City Ry. Co.*, 111 App. Div. 39.)

GRAY, J.   The plaintiff, in this action, seeks to recover of the defendant a penalty of fifty dollars for a violation of the provisions of section 104 of the Railroad Law (Ch. 565, Laws of 1890, as amended by ch. 676, Laws of 1892).  In the Municipal Court, where the action was brought and tried, the defendant had judgment.  On appeal to the Appellate Term, that judgment was reversed and judgment was ordered for the plaintiff, with leave to the defendant to appeal to the Appellate Division.  In that court, the determination of the Appellate Term was reversed and the judgment of the Municipal Court was affirmed; leave being given to the plaintiff to, further, appeal to this court.  These were the facts.  The plaintiff entered a south-bound car of the Third Avenue line at Bayard street in the Bowery; paid his fare of five cents and was given a red transfer ticket, which he made use of upon a west-bound car on Chambers street.  At West Broadway, he left the car and boarded a north-bound car of the Eighth Avenue line.  He tendered his transfer ticket to the conductor; but he refused to accept it and the plaintiff was compelled to pay a further fare of five cents to reach his des-

tination at Leonard street.   Under a rule of the defendant, the conductor could not accept a south-bound transfer upon a north-bound car, moving in a northerly direction.   The defendant, under certain contracts of lease, was operating the several street car lines as one system.

The provisions of section 104 of the Railroad Law, relating to street surface railroad corporations, which have contracted for the lease, or consolidation, of other roads, are as follows: "Every such corporation entering into such contract shall carry or permit any other party thereto to carry between any two points on the railroad, or portions thereof embraced in such contract, any passenger desiring to make one continuous trip between such points for one single fare, not higher than the fare lawfully chargeable by either of such corporations for an adult passenger.   Every such corporation shall upon demand, and without extra charge, give to each passenger paying one single fare a transfer, entitling such passenger to one continuous trip to any point or portion of any railroad embraced in such contract, to the end that the public convenience may be promoted by the operation of the railroads embraced in such contract substantially as a single railroad with a single rate of fare."   The question is whether the statute operated to prevent the defendant from regulating by any reasonable limitation the carriage of a passenger upon its lines for a single fare.   In exercising the power "to regulate the time and manner in which passengers and property shall be transported and the compensation to be paid therefor", conferred by subdivision 8 of section 4 of the Railroad Law, had it the right to promulgate a rule, which, in effect, would prevent a passenger from reversing the direction of his trip on its railroad system without paying another fare?   Under the regulation as made, a passenger entering a south-bound car on any of its longitudinal lines on Manhattan island was entitled, upon payment of his fare, to receive a red transfer, which would carry him, without a further payment, to the southernmost point of its system and upon any east or west-bound car of any intersect-

ing cross-town line. If a passenger entered a north-bound car he was entitled to a green transfer, upon which he might travel to the northernmost point of the system, with a similar right of taking any east or west-bound car on cross-town lines. If a passenger entered a cross-town car, in the first instance, he was entitled to a white transfer, which, upon boarding any north or south-bound car on intersecting longitudinal lines, would entitle him to receive from the conductor a red, or a green, transfer in exchange for his white ticket, according to the direction in which he was then bound. The limitation upon the passenger's privilege of traveling upon the defendant's car lines for one fare was that his trip must be continuous in the one general direction, as evidenced by the color of his transfer ticket. With this sole limitation, he could ride on any intersecting cross-town lines and on any of the longitudinal lines reached thereby.

It is contended that, by force of the provisions of the statute, no limitation could be imposed upon the right of transfer and that a transfer ticket must be available in any direction, according to the desire or whim of the holder. I am unable to assent to a construction of the statute, which finds no just support in a fair reading of its language and which would impose so onerous a burden upon the defendant. A passenger, under such a construction, would be able to accomplish a round trip on the defendant's lines for one fare. In this instance, the plaintiff, upon the one fare paid on entering the south-bound car on the Bowery, under his interpretation of the law, could have continued northerly from Chambers street on West Broadway to Canal street and there have boarded an east-bound car on the Canal Street line, which would have returned him to the Bowery near to his starting point ; or he could have taken a still more circuitous route. The transfer privilege permits of an hour's stoppage at transfer points and it can readily be seen how far reaching is the plaintiff's contention. I do not think that the statute intended to confer any such extraordinary right and, in my opinion, the regulation of the defendant was a reasonable one and not

in contravention of the statute.   It was as liberal in the privileges, which it accorded to the traveling public, as it was possible for the company to be ; short of allowing a round trip upon payment of a single fare.   It might happen, as in this case, that the passenger was taking as direct a route by the use of street railway lines, as was possible, from the point at which he boarded the car of the Third Avenue line to the point at which he left the car of the Eighth Avenue line.   It is manifest, however, with the enormous number of passengers carried daily to and fro upon the defendant's cars, thirty to forty per cent. of whom are transferred, that it would be almost, if not quite, impossible by any plan, workable under congested conditions of travel, to provide for a transfer that would indicate the destination of a particular passenger, intending, in good faith, to reverse his direction of travel by taking the third side of a quadrilateral route.   But, independently of this practical view of the subject, I do not think that the provision of the statute, when fairly considered, is susceptible of the construction, which is sought to be placed upon it.   What was intended by the legislature, when authorizing a leasing, or consolidation, of competing lines of railroad, appears to have been the attaching of a condition, by which the public would gain some advantage from it and its convenience be promoted thereby.   That condition was that the contracting companies should " carry   *   *   *   between any two points on the railroad, or portions thereof, embraced in such contract, any passenger desiring to make one continuous trip between such points for one single fare." The statute, more or less, defines the scope of the legislative enactment in the language used : " that the public convenience might be promoted by the operation of the railroads *as a single railroad with a single rate of fare*".   But a single railroad would never be required to give to a passenger a return transfer for one fare and it is hardly conceivable that it should be.   A trip, ordinarily, conveys the idea of transportation in one direction.   Unless connected with some other expression, it does not carry the idea of a return.

A "continuous trip" does not add to the import. A continuous trip, like a continuous line, is supposed to extend in the same general direction. (See *People* v. *Boston, etc., R. Co.*, 12 Abb. N. C. 230.) If this statute is to be interpreted as imposing any such double obligation, it would be subjecting the defendant to a burden, to which no single railroad is ever subjected. A railroad corporation, in operating a single system, may operate two, or more, lines of road between its terminals; but a passenger, purchasing a through ticket to his point of destination, would have no option to take a circuitous route. He would be confined to the through route. (See *Bennett* v. *N. Y. C. & H. R. R. R. Co.*, 69 N. Y. 594; *Cronin* v. *H. S. Ry. Co.*, 144 Mass. 249.) The contract of the defendant, in this case, did not differ, with respect to its right to regulate the carriage of the passenger, from the usual contract of a carrier, except so far as it was affected by the statutory provision. The defendant was required to carry him upon the several lines, which it operated, for a single fare and with the right to a transfer, but "substantially as a single railroad with a single rate of fare". If the legislature had intended to require railroad companies, coming within the purview of the statute, to carry a passenger for a single fare in a reverse direction from that in which he started, or on a round trip, as the result would certainly be in the great majority, if not all, of the cases, it would not have resorted to the comparison " of a single railroad " to express its object. Those words have their distinct place in construing the provision and they enlighten our understanding of its purpose. The statute should be read in the light of the habitual method of the railroad transportation of passengers; which is to require one fare for a trip upon its line and another fare for a return trip. That is the reasonable construction, which I think should be given to this statute. That sufficiently effectuates the policy of the state, in requiring, as a fair return for the privilege of contracting for the operation of competing lines as one system, under one control, such facilities in the way of a single

fare and of a free transfer on the several lines, as will promote the public convenience. That convenience has been consulted and promoted, sufficiently and, indeed, more amply, perhaps, than was essential, when the defendant, treating its railway system on Manhattan island as a single railroad, promulgates a regulation as to transfers, which permits a passenger to travel upon any, or all, of its northerly or southerly lines of railway for a single fare, provided, only, that he continue in the same direction, and enables him to ride on any of the cross-town lines, which may intersect the line upon which he may happen, at the time, to be proceeding. I think that the legislature did not intend so unreasonable a scheme, as the appellant contends for, and that to attribute to it an intention to compel the defendant to carry passengers, without limitation as to direction, would be to impute harshness and injustice, where none was necessary and which the language of the enactment does not import. A railroad corporation, however artificial a person in contemplation of law, and however subject its charter to the reserved power of the legislature to alter, has a right to exist under conditions as favorable as a sound state policy, a due regard for the public interests and a just and reasonable interpretation of the law will permit. It should not be burdened by unnecessary implication of a legislative meaning beyond what those considerations demand. When the legislature, in unmistakable terms and within constitutional limits, has exercised its power to regulate corporate operations, it should be given full effect by the courts; but no inferences unfavorable to a reasonable operation of its franchises should be allowed from words susceptible of use in more than one sense.

For these reasons, I advise that the order of the Appellate Division should be affirmed.

HAIGHT, VANN, WERNER and WILLARD BARTLETT, JJ., concur; CULLEN, Ch. J., and CHASE, J., dissent.

Order affirmed, with costs.