RITTER v. INTERNATIONAL RY. CO.

(Supreme Court, Special Term, Erie County. June 29, 1916.)

CARRIERS �köö12(10)—STREET RAILROADS—REGULATION—PASSENGER SERVICE—
STATUTE.

Under Public Service Commission Law (Consol. Laws, c. 48) § 49, subd. 7, requiring a street railway company to carry passengers between any two points on railroads or portions thereof embraced in such contract, and desiring to make one continuous trip between such points, for a single fare, where plaintiff was refused a transfer under a rule of the defendant street railroad company forbidding the issuing of transfers to points in the easterly parts from any point west of a named street, although he could have obtained a car which would have carried him to his destination without transfer by walking two blocks, he was entitled to recover.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 15–20; Dec. Dig. ⊙ōö12(10); Street Railroads, Cent. Dig. § 151.]

Appeal from City Court of Buffalo.

Action by Charles J. Ritter against the International Railway Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Joseph L. C. Bell, of Buffalo, for appellant.
Harold J. Tillou, of Buffalo, for respondent.

WHEELER, J. The plaintiff brought this action, and recovered a judgment against the defendant in the court below, for a penalty for an alleged violation of section 49, subd. 7, of the Public Service Commission Law, in failing to give the plaintiff a certain transfer from one of its street car lines to another.

The plaintiff boarded one of the defendant's east-bound cars at the corner of Oak and Eagle streets, in the city of Buffalo. His destination was Bailey avenue near the easterly terminus of what is known as the Sycamore street line. To reach his destination from the point where he first boarded the defendant's car involved two transfers, one at Michigan and William streets, thence going north to Sycamore street, and there changing again to the Sycamore street line, and going easterly to Bailey avenue. The plaintiff demanded a transfer to enable him to ride north on Michigan street to the Sycamore line. This was refused him by the conductor, who, in so doing, followed the instructions promulgated by a rule of the defendant company, forbidding the issuing of transfers to points in the easterly parts of the city from any point west of Michigan street.

The street car company undertakes to justify this rule as a reasonable one owing to its system of trackage in the city. This system of trackage, in a general way, radiates from the business center of the city like the spokes of a fan, and these radiating tracks are in turn crossed at various points by lines running substantially north and south. It is claimed that a person boarding one of these radiating lines west of Michigan street would, by successive transfers, be enabled to make a practical circuit of its lines, and thus return to the starting point without paying but a single fare; that, for the purpose of preventing such an abuse of the transfer privilege, the rule in question was adopted.

It is a fact that, if the plaintiff had seen fit to have walked westerly two blocks from the corner of Oak and Eagle street where he first boarded a car of the defendant, he could have taken a car of the Sycamore line which would have carried him to his destination without any transfer whatever.

It is argued therefore that, in view of the general situation, the rule of the company was a reasonable one, and within the decision of the Court of Appeals in the case of Kelly v. N. Y. City R. R. Co., 192 N. Y. 97, 84 N. E. 569, the street car company was justified in adopting and enforcing this regulation; and that it involved no substantial infringement of the plaintiff's rights under the statute to require him, if he wished to save an extra fare, to walk two blocks to get a car which would carry him to his destination without transfer.

It seems to the court that the defendant has attached too great importance to the claim of the possibility of a passenger abusing transfer privileges so as by the payment of a single fare to make the circuit of the defendant's lines. By a simple device in the printing of the transfer slips used (or by the punching of such slips) could be easily designated the fact whether the passenger was outward or inward bound. It is urged that this might necessitate a separate and different kind of slips for the east side of the city from those used on the west side, for the reason that the designation of "outward" and "inward" bound would be inapplicable to certain routes on the west side. Granting the contention, we do not think such a consideration should control the mandate of the statute.

Neither do we, nor can we, question the correctness of the decision or the law as laid down by the Court of Appeals in Kelly v. N. Y. City R. R. Co., 192 N. Y. 97, 84 N. E. 569, holding that the statute referred to, giving to "each passenger paying one single fare a transfer, entitling such passenger to one continuous trip to any point or portion of any railroad embraced in such contract," does not operate to prevent such corporation from regulating, by reasonable limitation, the carriage of passengers for a single fare, or to prevent a passenger from reversing the direction of his trip. Nevertheless, each particular case must be decided on its own particular facts.

The facts in this case differ from those presented in the Kelly Case, and we are of the opinion that to require the plaintiff to walk two blocks in order to take a direct line to his destination, when he was able to board one passing where he stood, which by transfers would bring

him equally to his destination, would be violating the plain language and purpose of the statute requiring the street railway company to carry passengers "between any two points on the railroads or portions thereof embraced in such contract, and desiring to make one continuous trip between such points for one single fare."

We think the judgment appealed from should be affirmed, with costs.

So ordered.