# Frederick Hampe et al. *v.* Pittsburg & Birmingham Traction Co. et al., Appellants.

*Street railways—Inclined planes—Lease—Continuous route—Acts of April 23, 1861, February 17, 1870, and March 23, 1870.*

The inclined plane company, incorporated under the special act of March 23, 1870, P. L. (1871) 1462, with power to construct an inclined plane and passenger railways with " all•the powers and privileges as are contained in the act regulating railroad companies approved February 19, 1849," has power to lease its property to another passenger road under the acts of April 23, 1861, P. L. 410, and Feb. 17, 1870, P. L. 31.

An absolute passage of the same car from one road to another without break or interruption, is not necessary to constitute a " connected " line within the meaning of the act of April 23, 1861, or a " continuous route " within the meaning of the act of Feb. 17, 1870.

The act of Feb. 17, 1870, P. L. 31, does not repeal the act of April 23, 1861, P. L. 410.

An inclined plane company organized under the special act of March 23, 1870, P. L. (1871) 1462, has authority to lease its whole system to another passenger railway company, where one of the railway lines of the lessor forms a continuous route with the road of the lessee, notwithstanding the break made by the inclined plane, in the centre of the line of the lessor.

Argued Oct. 26, 1894. Appeal, No. 142, Oct. T., 1894, by defendants, from decree of C. P. No. 1, Allegheny Co., Dec. T., 1891, No. 443, on bill in equity. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL, DEAN and · FELL, JJ. Reversed.

· Bill by stockholders of the Mount Oliver Inclined Railway Co. against that company and the Pittsburg & Birmingham Traction Co., to cancel lease.

The case was referred to Marshall Brown, Esq., as master. From the report of the master and from the record, it appeared that the Mount Oliver Inclined Plane Co. was chartered under the special act of March 23, 1870, P. L. 1871, p. 1462.

The material portions of this act are as follows :

" Section 3. The capital stock of said company shall consist of $20,000, to be divided into shares of fifty dollars each, with power to increase the same by a vote of the stockholders to any amount that may be required to carry out the purposes of the corporation ; and letters patent shall be issued whenever $5,000

is subscribed and ten per centum paid on the same; and the said president and directors shall have power to construct one or more inclined planes to run cars from any point or points, in the boroughs of Birmingham, East Birmingham and borough of Ormsby, in Allegheny county, Pennsylvania, to the brow of the hill of said boroughs; and for all freights, packages and passengers carried on said planes said company shall have the right to charge the rates allowed by law to the Pittsburg & Birmingham Passenger Railway Company.

"Section 4. The said company shall have the right to purchase, hold, improve, lease and convey, under its corporate seal, in the neighborhood of the termini of said roads, any amount of real estate, not exceeding five hundred acres at any one time, in one or more parcels, with authority to locate and construct any passenger railway that may be necessary to connect said real estate with said incline planes, and the same rates may be charged upon any of said railways as upon the inclined planes; the said company shall have all the powers and privileges and be subject to all the restrictions and liabilities, in constructing, locating and operating any of the said planes or railways as are contained in the act regulating railroad companies, approved the 19th day of February, Anno Domini one thousand eight hundred and forty-nine, and the several supplements thereto."

The company, under the powers conferred by its charter, constructed an inclined plane from the head of Twelfth street in the city of Pittsburg, to the brow of the hill. Subsequently the company became involved and its property and franchises were levied upon and sold by the sheriff. The purchasers organized a new corporation under the name of the Mount Oliver Inclined Railway Company, under the act of May 25, 1878, P. L. 145, and located, constructed and operated three lines of passenger railway in connection with said plane; one from the foot of said plane, along Twelfth street, to the tracks of the Pittsburg & Birmingham Traction Co. on Carson street, and two from the head of said plane, the one running to the borough of Beltzhoover and the other to Mount Oliver.

The Birmingham Street Railway Co., consisting of a number of street railway companies, formed under the general laws, was organized under the act of March 24, 1865, P. L. 49, and supplements, relating to the consolidation of railways.

The Pittsburg & Birmingham Traction Co. was chartered and organized under the act of March 22, 1887, P. L. 8.

On Sept. 23, 1891, said inclined railway company executed and delivered to the Birmingham Street Railway Co. a lease of all its property and franchises for a term of nine hundred and ninety-nine years, and upon terms found by the master to be favorable to it. This lease subsequently passed to the Birmingham, Knoxville and Allentown Traction Co., by lease from the Birmingham Street Railway Co. to the former, dated Oct. 31, 1891, and by agreement with the Birmingham, Knoxville and Allentown Traction Co., dated Nov. 12, 1891, it was assigned to the Pittsburg & Birmingham Traction Company, the defendant, appellant.

Previous to the time of the execution of this lease the Birmingham Street Railway Company had constructed a line of tracks along Bradford street, which tracks were physically connected with the tracks of the inclined railway company on Twelfth street, on the east, running from the foot of the plane to Carson street, along which latter street the tracks of the Pittsburg & Birmingham Traction Co. run, and on the west with the tracks of what is known as the "Short Line," operated also by the Pittsburg & Birmingham Traction Co., extending to the Union depot, in Pittsburg.

The master held that, for want of statutory authority, the property, rights and franchises of the inclined railway did not pass to the appellant traction company, and recommended a decree directing said traction company to surrender said inclined railway company possession of its property and pay the costs of this proceeding; to which report exceptions were filed and overruled, the report of the master confirmed and a decree entered in accordance with his recommendation, in an opinion by SLAGLE, J.

*Error assigned* was decree, quoting it.

*James R. Sterrett, James C. Doty* with him, for appellant.— Under the acts of April 23, 1861, and Feb. 17, 1870, railroads are given the power to make and take leases of their property and franchises, provided the roads so leasing shall be directly, or by means of intervening railroads, connected with each other.

The words of the proviso in the two acts are almost the same; the proviso to the act of 1870 has, however, this additional clause: " Thus forming a continuous route or routes for the transportation of persons and property."

The terms "railroad" and "railway" are synonymous, and it has been definitely settled by this court that the term railroad as used in these acts includes street passenger railways as well as steam railways: Rafferty v. Traction Co., 147 Pa. 579.

Connected railroads are such as admit of the convenient interchange of freight and passengers, at the point of intersection : Phila. & Erie R. R. v. Catawissa R. R., 53 Pa. 30.

There is no repealing clause in the act of 1870, and if it does repeal the act of 1861, it must be by implication. Repeals by implication are never favored. If a later statute cover precisely the same ground, or, if it be inconsistent with or repugnant to an earlier statute, it will repeal the latter by implication, but the implication must be strong: Hanover Boro.'s Ap., 150 Pa. 204; Painter's Ap., 160 Pa. 89.

The acts of 1861 and 1870 do not cover the same ground. The act of 1861 gives all railroads created by or existing under the laws of this commonwealth the right to purchase and hold stocks and bonds, or either, of any other railroad company or companies, chartered by, etc., of this commonwealth. No such power is given by the act of 1870. The act of 1870 was evidently intended merely to extend the privileges granted by the act of 1861, so as to include the lease of a road beyond the limits of the commonwealth: Pittsburg & Connellsville R. R. v. Bedford & Bridgeport R. R., 81* Pa. 104.

The word continuous must receive a reasonable construction, and in the light of the subject-matter to which it applies. It certainly is no stronger term than the word connect, which literally means to tie together: Phila. & Erie R. R. v. Catawissa R. R., 53 Pa. 30.

*J. S. Ferguson, Jacob H. Miller, Archibald McBride* and *E. G. Ferguson* with him, for appellees.—Unless some statutory authority, giving to the inclined railway company the power to make the lease of its property and franchises, can be shown, it has none. The only authority for the leasing of one line by a company operating another is found in the act of April 23,

1861, P. L. 410, and the act of Feb. 17, 1870, P. L. 31. At the time these acts were passed, there was no such thing known as a street passenger railway operated by any other than horse power. When the act of 1861 was passed, no such thing as a passenger incline was operated in the state. This Court, however, has decided in Rafferty v. Traction Co., 147 Pa. 579, that the act of Feb. 17, 1870, P. L. 31, applies to street passenger railway companies as well as to steam railroad companies, but it has never been decided that under either the act of 1861 or the act of 1870 a railroad such as the Pennsylvania Railroad could lease the street passenger railways running to and from its stations.

The act of 1870 was evidently intended to meet the decision in the case of Phila. & Erie R. R. v. Catawissa R. R., 53 Pa. 20, and to limit the right of such leasing to a case where there would be thereby provided " a continuous route or routes for the transportation of persons and property." There is a broad and manifest distinction between a mere connection and a continuous route.

Even if it be admitted that sufficient power resided in the Mount Oliver Inclined Railway Co. to make the lease complained of, it could only make it to such company as was legally authorized to take such a lease, and we do not think it can show that the Pittsburg & Birmingham Traction Co. had any such power. In the absence of express legislative authority it could not take the lease : Pa. R. R. v. St. Louis R. R., 118 U. S. 290 ; Oregon Ry. & Navigation Co. v. Oregonian R. R., 130 U. S. 1.

OPINION BY MR. JUSTICE MITCHELL, Jan. 7, 1895 :

The master found the facts as to good faith, advantage to the lessor, etc., in favor of the lease, but both he and the learned court below held it void for want of authority. In reaching this conclusion they failed to give sufficient weight to the special and extraordinary charter powers of the Mount Oliver Inclined Plane Railway Company, and fell into error by separating its franchises and having regard to the several parts singly and not to the whole. The master rests his finding on the classification of railroads and the absence of authority to lease between the different classes. The court puts its decision rather on the

proviso of the act of 1870, by which the right of leasing is limited to railroads forming a continuous route.

The master's view rests on the finding that the Mt. Oliver Company is an inclined plane railroad, and as such has no power to lease to a passenger railroad. But under its charter the Mt. Oliver Company is not only an inclined plane company but also a passenger railroad. In law it is as much the latter as the former, and in fact it is more so, for it owned and operated one incline and three passenger roads at the time of the lease. As a passenger railway its power to lease to another passenger road under the acts of 1861 and 1870 cannot be doubted, and such power was not taken away by the possession of the additional franchise of an inclined railroad. To hold that it was, would be to hold that a gift meant to be additional and cumulative, in effect took away powers expressly granted in the first instance. If there were any doubt on this point moreover it would be conclusively settled by the express grant in the charter, of " all the powers and privileges . . . . in constructing, locating and operating any of the said planes or railways " contained in the general railroad act of 1849.

Turning now to the other point, was the lease void because of the proviso of the act of 1870 requiring the lessor and lessee roads to form a " continuous route? " The act of April 23, 1861, P. L. 410, requires only that the roads leasing and leased shall be " connected," and in Phila. & Erie R. R. Co. v. Catawissa R. R. Co., 53 Pa. 20, it was held that this does not mean necessarily that the same cars shall pass from one road to the other without interruption, but it is sufficient if the roads intersect in such manner as to admit of the convenient interchange of passengers and freight at the point of intersection. The wisdom of the broad view taken in that case, in furtherance of the real object of the statute, has been signally illustrated by the subsequent progress of mechanical inventions, for while it was there declared that the roads in question being of different gauges there was a " physical impossibility " that the cars of one line should run on the tracks of the other, or that there should be " any mechanical connection between the two roads," that difficulty, then argued to be insuperable, has long since been overcome by the transfer of the car bodies to trucks of the other gauge. Under that decision therefore the mere fact of the

necessity of changing cars at the inclined plane, would not prevent the roads from being connected within the requirement of the act of 1861. It has never been held by this court that that act was repealed by the act of Feb. 17, 1870, P. L. 31. The reasoning of the court in Pittsburg & Connellsville R. R. v. Bedford R. R., 81* Pa. 104, is not reconcilable with that view. The opinion of the court is an argument to show that the roads in question in that case were not connected within the meaning of the act of 1861, and a fortiori not within the act of 1870. It would have been much easier to have rested the decision on the latter act alone, and as there was a dissent, it is not to be supposed that Justice SHARSWOOD voluntarily assumed the heavier burden, if the opinion of the court had been that the act of 1861 was out of the way by repeal.

But we are not prepared to say that even under the act of 1870 an absolute passage of the same car from one road to the other without break or interruption, is necessary to constitute a " continuous route." The reasoning of the court in Phila. etc. R. R. v. Catawissa R. R., 53 Pa. 20, supra, is against such a construction, and, as already noted, time and experience have amply vindicated the wisdom of a broad interpretation of the statute in furtherance of its real object, the facilitation and convenience of travel and transportation. But the question does not arise in the present case, because there is no doubt of the continuity of the route at the point of intersection of the leased and leasing roads. The break, whatever its effect, is not at the junction but in the centre of the lessor, and is neither greater nor less after the lease than it was before. As already said the Mt. Oliver Company is both an inclined plane and an ordinary passenger railroad. In its latter capacity it is strictly continuous with its present lessee, and the fact that it has at another point of its line an inclined plane, and that the whole system is leased as an entirety, does not make it any less so. The passenger who before the lease came down the plane, and there changed cars to be carried on the lessor's railway by 12th street to Carson, now does exactly the same thing with the addition that he may continue in the same car beyond Carson street over the line of the lessee company. This is clearly a continuous route.

How far the franchise of the Mt. Oliver Co. to purchase

and improve real estate may be ultra vires as to the lessee is a question not raised and we do not pass upon it in any way.

Decree reversed and bill dismissed with costs.