## DRYDEN, Appellant, v. ST. LOUIS TRANSIT COMPANY, Respondent.

### St. Louis Court of Appeals, October 16, 1906.

1. **CARRIERS OF PASSENGERS: Contract of Carriage.** Where one took passage on a street car supposing he would be carried to his destination in the car upon which he took passage, and at a certain point en route the car was diverted from its course in order to make up lost time and the passenger was offered a transfer to another car that would carry him to his destination, which transfer he refused, he had no cause of action against the street railway company for failure to comply with its contract of carriage.

2. **STREET RAILWAYS: Regulating Ordinance.** Where an ordinance of the city of St. Louis authorized the routing of cars of a street railway company and provided that no change of the routing should be thereafter made, except upon the approval of the proper officers of the city, and that a car should not be turned from its established route except in case of unavoidable accident; it was no violation of such ordinance to turn a car from its regular route for the purpose of making up time that had been unavoidably lost.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

AFFIRMED.

*A. Nicholson* for appellant.

(1) It is a recognized rule that carriers have power to make and enforce reasonable rules and regulations, etc. "But the regulation must be so published that all persons who are to be affected by them, whether passengers or servants, can easily become informed of their existence and requirements; for no one can be bound by a rule or regulation of the existence or character of which he had no means or opportunity of informing himself." 2 Wood on Railways (Ed. 1894), p. 1203. (2) Where a company undertakes to carry a

passenger to a particular station and the train on which he takes passage is one which, under the company's regulations, is required to receive and discharge passengers at such station, the company will commit an actionable wrong in requiring the passenger to leave the train before reaching the destination. Sira v. Wabash, 115 Mo. 127; Martindale v. Railroad, 60 Mo. 508; 3 Woods on Railways (Ed. 1894), p. 1655; Alabama v. Heddlestone, 82 Ala. 218; Railroad v. Katz, 23 Fla. 139. (3) Proof that a car habitually proceeded over a certain route to its terminus is sufficient proof of the rule requiring it to do so. "A street railway has no depots." "Its stations are the street corners." Sternberg v. State, 7 A. R. & C. Rep. 585. (4) Section 1760d of Ordinance 21113 pleaded and put in evidence is a valid exercise of the general police power delegated to the city (this ordinance includes the vigilant watch ordinance), and one, who boards a street car which, it is shown, habitually and regularly proceeds over a certain route without change of cars to a certain terminus, and there being nothing to inform him to the contrary, and pays his fare, has a right to presume that the car will follow the rules and regulations of the company, as established and proved by custom and usage, and that it will proceed according to the requirements of the law and the ordinance, and travel as usual over the usual route to its usual destination. Riska v. Railroad, 180 Mo. 168; Sepetowski v. Transit Co., 102 Mo. App. 119; Meyers v. Transit Co., 99 Mo. App. 363; Gebbart v. Transit Co., 97 Mo. App. 373.

*Glendy B. Arnold* for respondent.

BLAND, P. J.— The action was begun before a justice of the peace, in the city of St. Louis, and in due course reached the circuit court by appeal, where it was tried anew to the court sitting as a jury, who, after hearing all the evidence, declared the law to be that

under the law and the evidence the plaintiff was not entitled to recover, and rendered judgment for the defendant, from which judgment plaintiff duly appealed.

The complaint filed before the justice of the peace stated two separate and distinct causes of action. The first count or paragraph was to recover for an alleged breach of defendant's contract to carry plaintiff to his destination, Broadway and Lucas avenue. The second count or paragraph is predicated upon section 1760d of city ordinance (city of St. Louis) No. 21113, which reads as follows:

"Except in case of unavoidable accident or when a car is about to turn in according to a schedule at a car shed, or where extra cars are required to run temporarily under exceptional circumstances to a particular point for the accommodation of the public and are plainly placarded to the effect, every street car company or association operating, managing, controlling or running any line of cars, shall be required to run each of its cars that may be carrying one or more passengers to the end of the entire route, and shall not require any passenger to alight from any one of its cars and take a preceding or succeeding car traveling over the same route in order to continue to his or her destination.

"This section shall not be so construed to prohibit the reasonable transfer of passengers from one line to another, or from one division to another, at any reasonable point from which said lines or divisions do not continue on the same route; but no such company or association shall under any existing charter or franchise establish any new route or routes which require the transfer of passengers to another car in order to reach any point accessible without a transfer on August twenty-eight, nineteen hundred and two, and all routes as then operated shall continue to be operated without abridgment. Provided that in case of emergency, such as the blocking of the tracks caused by conflagra-

tions or under similar exigencies, the cars may in order to accommodate public convenience, temporarily be run over other tracks until the regular route can again be covered; and provided further that such companies or associations may make all lawful changes in the routes when public convenience requires, on condition that the proposed changes first received the written approval and sanction of the mayor, president of the council, and street railway supervisor, if there be one, or any two of said officials, and said written approval has been filed with the register. And provided further that said written approval may at any time be revoked by any two of the officials above named, and upon such revocation of such approval or sanction as aforesaid, the route originally existing before such sanction or permit shall forthwith be established, subject to the provisions of this ordinance."

By another section of the ordinance a violation of section 1760d is made a misdemeanor, punishable by a fine of not less than five or more than five hundred dollars "for each and every offense for every day during which any unlawful order or schedule remains unrevoked."

On April 16, 1904, defendant operated what is designated "the Tower Grove Division" of its street railway system, from a point in the southwestern part of the city of St. Louis to its eastern terminus at Broadway and Lucas avenue (Union Market). On said day plaintiff was received on defendant's car No. 750, of the Tower Grove division, traveling east, at Twelfth and Market streets, intending to go to Broadway and Lucas avenue, the eastern terminus of the car's route. When the car reached Broadway and Olive street, the conductor informed the passengers that the car would not go to Broadway and Lucas avenue but would proceed east on Olive to Fourth street, on Fourth to Pine and on Pine to Sixth, on its return trip to the southwestern

part of the city, and requested the passengers to take a car following in close proximity, which was going to Broadway and Lucas avenue.     Plaintiff refused to change cars.  The conductor asked him to take a transfer and board the next car, which he refused to do. Plaintiff was not informed that he would not be carried to his destination until the car reached Broadway, and stated that if he had known the car was not going to his place of destination before he boarded it he would have waited and taken another car; that his fare of five cents was not tendered back to him.

The evidence on the part of the defendant shows that there had been a delay of fifteen minutes, caused by a "jammed switch," resulting in a blockade and disarrangement of the spacing of the cars on the line.  The superintendent of the line testified that in order to restore the proper spacing of the cars and to make up the time lost by car No. 750, caused by the blockade, he ordered the conductor to make the loop at Fourth and Pine streets instead of Broadway and Lucas; that by doing this the car would gain about six minutes time on its return trip to the southwestern part of the city.

On motion of the defendant, the court required the plaintiff to elect upon which of the two counts of his complaint he would go to trial.  Plaintiff excepted to this ruling of the court, and elected to proceed on the first count of his complaint.

1.  That there was no substantial breach of the defendant's contract to carry plaintiff to his destination, we think is clearly shown by plaintiff's own evidence. At Broadway plaintiff was offered a transfer to another of defendant's cars (at hand) to carry him to his destination, four blocks north of where he was.  The mere inconvenience to plaintiff of getting off one car to take passage on another to be carried immediately to his destination was not actionable breach of defendant's

contract to carry him, and we approve the finding of the court on this count of plaintiff's complaint.

2. All the evidence plaintiff had to sustain his action on the second count was heard without objection. In this state of the case, the question presented is, conceding the two causes of action were properly joined in the same complaint, and that the court erred in requiring the plaintiff to elect upon which of the two counts he would proceed to trial, was the error prejudicial? It was not prejudicial unless the evidence show, or tends to show, the defendant was guilty of a violation of the section of the ordinance upon which the second count is predicated. Waiving a discussion of the question as to whether or not a violation of the ordinance gave a right of action to a private individual, we think the evidence falls short of showing a violation of the ordinance on the occasion complained of. The ordinance, in effect, legalized the defendant's routing of its cars as it existed on August 28, 1902, and provided that no change of the routing should be thereafter made without the sanction in writing of the mayor, the president of the council, and the supervisor of street railways, and provided, in effect, that a car should not be turned from its established routing except in cases of unavoidable accident or where it was about to be turned in according to schedule at a car shed. The ordinance does not attempt to take away from the company its lawful right to make all reasonable rules and regulations for the conducting of its business, nor to specialize all and every circumstance under which a car might be temporarily turned from its regular route. As shown by the evidence, it was necessary to turn the car, on which plaintiff was a passenger, from its regular route for the purpose of making up time that had been unavoidably lost, to restore it to its schedule time and to give it the usual space ahead of the car that was following. We think this was not only a reasonable diversion, but

a necessary one, for the accommodation of the traveling public, and was in no sense a violation of the letter or spirit of the ordinance relied upon, and hence afforded the plaintiff no right of action, and we conclude that plaintiff's evidence failed to establish a right of action on either count of the complaint, and affirm the judgment. All concur.