not seem to me as though, if the proof newly discovered were presented to another jury, the result would likely be changed.

The judgment and both orders should be affirmed, with costs. All concur.

(120 App. Div. 134.)

## BARON v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Division, First Department. June 21, 1907.)

**1. CARRIERS—STREET RAILROADS—TRANSFERS—CONSTRUCTION.**

Railroad Law, Laws 1890, p. 1114, c. 565, § 104, as amended by Laws 1892, p. 1382, c. 676, requiring every street railway company contracting with another company for the use of their respective roads to carry passengers for one fare between points on the railroads embraced in the contract where the passenger desires to make one continuous trip, relates to companies that have entered into contracts with other companies to insure a continuous passage from a point on one road to a point on the other road embraced in the contract, and does not apply to a company running short-service and long-service cars over its own line.

**2. SAME.**

A street railroad must transport for a single fare a passenger whose fare is accepted on any car to any point on its line reached by cars running in that direction, regardless of whether or not the car boarded is a short-service or a long-service car.

Laughlin, Lambert, Scott, and Clarke, JJ., dissenting in part.

Appeal from Appellate Term.

Action by Samuel Baron against the New York City Railway Company. From a determination of the Appellate Term (102 N. Y. Supp. 746) affirming a judgment of the Municipal Court in favor of plaintiff, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, LAUGHLIN, CLARKE, SCOTT, and LAMBERT, JJ.

James L. Quackenbush, for appellant.
Lawrence J. Bershad, for respondent.

INGRAHAM, J. This action was commenced in the Municipal Court, the complaint being verbal, and was to recover a penalty "according to the provisions of sections 101–104 of the railroad law." Laws 1890, pp. 1113, 1114, c. 565. A bill of particulars was served by the plaintiff, which stated that on the 28th day of March the plaintiff boarded a street car operated, controlled, and managed by the defendant, at the corner of Seventeenth street and Sixth avenue, and continued to ride from such place to Fourth street and Sixth avenue, when defendant, by its servants, agents, and employés, without previous notice to the plaintiff, requested plaintiff to get off and leave its car as said car was being swung around to the north track for a trip uptown, refusing at the same time to give plaintiff a transfer for a continuous downtown trip, whereto he was bound. The plaintiff had judgment, which was affirmed by the Appellate Term. Upon the trial the plaintiff testified that he got on the car at the corner of Seventeenth street and Sixth avenue; that the car was marked "Brooklyn

Bridge"; that he intended to go to Spring street and West Broadway, but, when he got to Fourth street and Sixth avenue, the conductor said, "All out!" whereupon plaintiff said to the conductor that the car was marked "Brooklyn Bridge," and conductor said, "No; it is not, it is marked 'Fourth Street'"; that plaintiff then asked for a transfer, when the conductor referred him to an inspector; that he went to the inspector, who turned his head, and did not look at him; that he then waited a little while, and, not seeing any car coming, as he was in a hurry, walked down to his place of business. He did not know how long he waited, but was in a hurry and walked down. On cross-examination he repeated that the car was marked "Brooklyn Bridge." For the defendant the conductor testified that the only mark on the car was "Fourth Street Only"; that there were signs on the side of the car reading "Sixth Avenue and Fifty-Ninth Street"; that these cars start at First avenue and Fifty-Ninth street, run west on Fifty-Ninth street to Sixth avenue, and down Sixth avenue to Fourth street; that the Sixth avenue cars do not run to Brooklyn Bridge, but do run to South Ferry; that, when the plaintiff asked for a transfer, he referred him to an inspector. The motorman also testified that the sign on the car read "Fourth Street Only," with a sign on the side of the car reading "Sixth Avenue and East Fifty-Ninth Street"; that the Sixth avenue line did not run to Brooklyn Bridge. There was no evidence of any lease or contract between this defendant and any other road under which the defendant operated two railroads, but the evidence is undisputed that the route of the particular car on which the plaintiff was a passenger was from Fifty-Ninth street and East river to Sixth avenue and Fourth street.

The Appellate Term upheld this recovery under section 104 of the railroad law (chapter 565, p. 1114, Laws 1890, amended by chapter 676, p. 1382, Laws 1892). That section is a part of article 4 of the railroad law, relating to street surface railroads, and it provides:

"That every such corporation entering into such contract shall carry or permit any other party thereto to carry between any two points on the railroads or portions thereof embraced in such contract any passenger desiring to make one continuous trip between such points for one single fare, not higher than the fare lawfully chargeable by either of such corporations for an adult passenger. Every such corporation shall upon demand, and without extra charge, give to each passenger paying one single fare, a transfer, entitling such passenger to one continuous trip to any point or portion of any railroad embraced in such contract, to the end that the public convenience may be promoted by the operation of the railroads embraced in such contract substantially as a single railroad with a single rate of fare."

This provision was taken from chapter 305, p. 525, of the Laws of 1885. That act contained a provision allowing street surface railroad corporations to contract with any other such company for the use of their respective roads or routes, or any portion thereof, and thereafter to use the same in such manner and for such time as may be prescribed in such contract. This provision of the law of 1885 was inserted in the railroad law as section 78. Section 4 of that act provides that each and every corporation entering into any such contract shall carry any passengers desiring to make a continuous trip between any two points on the railroads or portions thereof embraced within such con-

tracts for a single fare, and the provisions of this section were insert-
ed in the railroad law, as section 104. Section 104 of the railroad law
was considered by the Court of Appeals in O'Reilly v. Brooklyn
Heights R. R. Co., 179 N. Y. 450, 72 N. E. 517, and, after citing the
provisions of the statute, it was said:

> "It will be observed that the language of the statute is that 'every such
> corporation entering into such contract shall carry,' etc. The obligation to
> carry, therefore, arises from entering into the contract. The defendant com-
> pany was the lessee and entered into the contract with the lessor, thereby un-
> dertaking to operate the roads of the lessor company. When a street surface
> railroad company engaged in the operation of a railroad under the statute
> leases another railroad and commences to operate the same, which roads
> intersect each other, the evident purpose of the act was that they should be
> deemed 'embraced' in the contract, and that passengers should be transferred
> from one road on to the other, so as to entitle 'such passenger to one contin-
> uous trip to any point or portion of any railroad embraced in such contract, to
> the end that the public convenience may be promoted by the operation of the
> railroads embraced in such contract, substantially as a single railroad with a
> single rate of fare.' We think, therefore, that a fair and reasonable construc-
> tion of the statute is that the lessee railroad, in taking a lease of another
> railroad, undertakes to transfer passengers from its own line to that of
> the leased line and vice versa."

In Griffin v. Interurban St. Ry. Co., 179 N. Y. 438, 72 N. E. 513,
the history of this provision of the statute is stated, chapter 305, p.
525, of the Laws of 1885, considered, as is also the effect of the revi-
sion of that act by the railroad law. The court there said:

> "It is quite manifest from this review of the legislation bearing on the
> controversy that present section 104 of the railroad law covers leases duly
> executed between street surface railroad companies and particularly the
> leases now under review. It is obvious that the language of present section
> 104, 'Every such corporation entering into such contract,' etc., that the word
> 'such,' in that connection, refers to 'any railroad corporation or any corpora-
> tion owning or operating any railroad or railroad route within this state,'
> which is the language of section 78 as amended."

I think these decisions confirm the construction which appears upon
the face of the section, that this section only relates to railroad com-
panies that have entered into contracts or leases with other roads to
insure a continuous passage from a point upon one road to a point
upon the other road embraced in the lease or contract. The right
of a passenger to a continuous trip over a road owned or operated
by a railroad company, when no contract or lease has been entered
into between such railroad company and others operating other rail-
roads, does not come within this section, and whatever right this
plaintiff had to a continuous trip over the route of the Sixth avenue
road must depend upon other provisions of the statute, and not upon
section 104. There was no request by this plaintiff for a transfer
to a point upon any leased line, or the line of any railroad which was
operated under any contract with the defendant or its predecessors
in title. There was no evidence that there was any contract or lease
between this defendant company or its predecessors in title and other
railroads under which other railroad lines were operated. As the
judgment was sustained solely under section 104 of the railroad
law, it cannot be upheld.

I think it is quite clear that, even if it was proved that the defend-

ant was operating the Fifty-ninth Street line from Sixth avenue to the East river under a lease or contract, the provisions of section 104 of the railroad law would not apply to a passenger who did not seek a continuous trip from a point on one of the railroad lines embraced within such contract or lease to a point upon the other line so embraced. There is no provision of the railroad law to which our attention has been called that requires every car to run over the whole of every line operated by a street railroad. It is quite evident that it is necessary for railroad corporations in the operation of their roads, both for the proper and economic management of the line and convenience of the public, that cars should start at various parts of the line. It is certainly not essential that every car should run over the whole line, and there is no provision of law that requires a road to be operated in such a manner. The statement of the plaintiff that this car had upon it the words "Brooklyn Bridge" is not supported and is against the weight of evidence; but, even if that statement was true, the car was nevertheless on a route which did not go to the Brooklyn Bridge. Whatever cause of action the plaintiff would have as against the defendant for refusing to continue to carry him beyond the route of this particular car, he is not entitled to the penalty prescribed by section 104 of the railroad law, which relates only to routes embraced within the contract as therein specified. Section 101 of the railroad law provides no penalty for a violation of its provisions, and, as the plaintiff did not wait until the following car came, and ask to be transferred, he was not refused such transportation.

The determination appealed from should therefore be reversed, and a new trial ordered, with costs to the appellant to abide the event.

LAUGHLIN, J. I agree with Mr. Justice INGRAHAM with respect to the construction of section 104 of the railroad law, but I agree with Mr. Justice SCOTT that it is the duty of the defendant to transport for a single fare a passenger whose fare is accepted on any car to any point upon its line reached by cars running in that direction, regardless of whether or not the car boarded by the passenger is a short-service or a long-service car. This duty is, I think, clearly imposed by section 101 of the railroad law. Inasmuch as the point to which the plaintiff desired transportation was upon the main line or a branch of the defendant, and not to a point on a leased line or one operated by it under a contract, section 104 of the railroad law does not apply, and the penalty therein prescribed is not applicable. No penalty is imposed in section 101 of the railroad law for a violation of that section; but section 39 of the railroad law, which is a general provision and applicable, as I understand it, alike to steam and street railroads, imposes a penalty of $50 upon a railroad for asking or receiving more than the lawful rate of fare, "unless such overcharge was made through inadvertence or mistake, not amounting to gross negligence," and authorizes the recovery in the same action of the excess of fare charged. The Legislature has not expressly provided for a system of transferring to be followed by the

railroad in complying with the requirements of section 101 of the railroad law in carrying a passenger from one point upon its line to any other point upon its line, or upon a branch thereof, and perhaps the necessity for adopting short-service lines was not anticipated. The duty of carrying a passenger to his destination, according to the command of the statute, imposes upon the railroad the duty of prescribing regulations for the instruction of its conductors that will enable them to afford the passenger the transportation to which he is entitled. I agree that the railroad company is not obliged to run all of its cars the full length of its line, and that establishing a short-service system to relieve local congestion is fairly within the discretion vested in the board of directors. I am also of opinion that, if a passenger boards one of the short-service cars with notice or knowledge that its destination is short of his destination or is informed of that fact before paying his fare, the company may refuse to carry him beyond the destination of the car; but he should receive actual notice before the company accepts his fare, and should be given an opportunity after notice to remain off or alight from the car if on. If, however, the passenger pays his fare without knowledge of the destination of the car, and the conductor receives it without informing him of the destination of the car, and that, if he desires to go beyond that point, he must take another car; then I think it is the duty of the company either at the destination of the car or at some intermediate point to transfer the passenger to another car. It is and should be immaterial to the passenger whether he is transferred by a paper transfer or otherwise, so long as he is permitted to continue his journey upon another car to his destination. If a passenger pays one fare without knowledge or notice of the destination of the car which is short of the point to which he desires transportation, and, upon the same or another car, an additional fare is exacted for carrying him beyond the destination of the car which he first boards, I am of opinion that the carrier becomes subject to the penalty prescribed in section 39 of the railroad law. Perhaps it will be difficult to devise a practical rule on this subject, other than one for some system of transferring passengers at the end of the short-service line, which will not result in innumerable controversies between passengers and conductors and in much litigation, but that cannot deprive the passenger of his statutory rights. In the case at bar, however, no excess fare has been charged. The passenger did not wait at the terminus of the short-service car until a through car arrived or attempt to board or ride upon the through car. He was carried for a single fare as far as the car which he boarded went, and, at its destination, upon the refusal of defendants' agents to give him a transfer, no car being in waiting or having arrived, he walked to his destination. As no additional fare was asked or received, this does not constitute a violation of section 39 of the railroad law, and therefore the recovery of the penalty cannot be sustained.

I therefore concur with Mr. Justice INGRAHAM in the reversal of the determination of the Appellate Term, and of the judgment of the Municipal Court.

LAMBERT, J., concurs.

SCOTT, J. In my opinion section 104 of the railroad law does not require so close a construction as is claimed for it by the appellant. The underlying purpose of our legislation respecting street surface lines is that a passenger shall be entitled to one continuous ride for a single fare. Section 101 of the railroad law, which originated in chapter 252, p. 314, Laws 1884, § 13, provides, in express terms, that no street corporation shall charge any passenger more than five cents for one continuous ride from any point on its road to any other point thereof. Later on, when street railroad corporations sought to consolidate control by means of leases and traffic contracts, the Legislature passed acts from time to time designed to prevent the charging of more than one fare for a continuous trip, when such trip covered parts of lines belonging to different corporations, but subjected by contract to the same control and management. This legislation has finally culminated and crystallized in section 104 of the railroad law. This section requires the carrying of a passenger for a single fare between any two points on the railroads contracting with each other "or portions thereof" embraced in such contract. In view of the history of legislation upon the subject, and the purposes sought to be served, it cannot, I think, be fairly said that the Legislature intended to impose upon a street railroad company the obligation of carrying a passenger over two or more lines for a single fare, and at the same time meant to permit, by any device, the charging of two fares for a continuous trip beginning and ending at points on the same line. Nor am I prepared to accede to the contention of the defendant that it can cast upon intending passengers the burden of ascertaining before boarding a car whether that car is intended to go to the end of the line, or only part way. What the passenger is entitled to is a "continuous trip," and if, for reasons of its own, impelled by motives of economy, the company undertakes to operate "short-service" cars, and a passenger desiring to travel beyond the limits of that service embarks upon a short-service car, whether by accident or design, he is entitled to continue his journey by another car of the same line to his point of destination, and to insure this he is entitled to a transfer or other evidence of his right to complete his journey without the payment of an additional fare. To hold that by affixing somewhere upon a car what is described in the testimony as "a small block sign," indicating that the car is going only to some point on the line, short of its terminus, dedicates that car to short-service passengers only, and establishes a sort of waiver by any passenger embarking upon it of the right to be carried beyond the designated point, would be, as it seems to me, to place a most unreasonable construction upon the railroad law, and impose upon the passenger a burden which should be borne by the company. Such a construction would make no allowance for nervous passengers, for those of infirm eyesight, or those who are illiterate, or unable readily to read English. In my opinion the statute which is designed to secure to each passenger a "continuous trip" will be construed as favorably in favor of the company, as it may be, if the right to run short-service cars be recognized, so that a "continuous" ride may consist of two successive rides upon different cars, without going so far as to require a passenger, at his peril, to ascertain before he boards the car just how far

it is going. It is not made apparent that the public service will be impeded, or the public convenience be defeated, if the company is required to transfer from "short-service" to "long-service" cars passengers desiring to travel beyond the arbitrarily selected terminus of the short service.

The determination of the Appellate Term should be affirmed, with costs.

CLARKE, J. I concur with the views expressed by Mr. Justice SCOTT. In addition and in answer to certain technical objections to this action noted by Mr. Justice INGRAHAM, I think it fair to state that, upon the argument before this court, the learned counsel for the appellant urged that this court, irrespective of the technical question of the refusal of a "transfer," express its opinion upon the right of the company to refuse to transport a pasenger who had boarded a "short-service" car from the terminus of said car to his destination upon a following car without the exaction of an additional fare. I assume that irrespective of the pleadings parties may, by their conduct, admissions, contentions, and waivers in open court, shape the litigation. As counsel stated that the purpose of the appeal and the real question involved was as above set forth, it seems to me that the question was submitted to the court, and so is before us for decision.