[No. 8973. Department Two. December 3, 1910.]

OLIVER C. McGILVRA, *Respondent*, v. SEATTLE ELECTRIC
COMPANY, *Appellant*.[1]

. STREET RAILROADS—FRANCHISES —RIGHTS—MOTIVE POWER. A
franchise for various street car routes authorizing the company to
propel their cars either by electricity or cable, empowers the com-
pany to make a change and employ both on a single route, especially
where that has been the contemporaneous construction of the city
council.

SAME—OPERATION—MOTIVE POWER—CONTROL—REVIEW BY COURTS.
The expediency and propriety of allowing a change of motive power
on a street car route, thereby preventing continuous passage and
requiring transfers, is for the determination of the board of public
works, and the courts will not interfere with the deliberate judgment
except for abuse of discretion.

SAME—OBJECTIONS TO CHANGE. Objection to a change of motive
power on a street car route on the ground that the service will be
inefficient is unavailing, since the authorities can compel an effi-
cient service.

SAME—SERVICE—TRANSFERS—CONTINUOUS PASSAGE—CHANGE. A '
street car company may, with the approval of the city, change from
a through service to a transfer service, although it may cause some
inconvenience.

SAME—FRANCHISES—CONSTRUCTION. A clause in a franchise ex-
pressly restricted to existing street railways that may be acquired
and used as a part of the system has no application to any part of
the old system.

SAME—SERVICE—CHANGE IN ROUTES—TRANSFERS. Where a street
car franchise requires the issuance of transfers from one line to
another, the matter is within the control of the city, and the courts
will not interfere with proposed changes in routes and service in
anticipation of a breach of the contract of the company respecting
transfers.

SAME—CONTROL—REVIEW BY COURTS—INJUNCTION. Where the de-
termination of engineering problems respecting a street railway
route has been vested in and decided by a board of public works, the
courts will not, upon conflicting evidence by affidavits, interfere by
injunction to set aside the decision.

[1]Reported in 111 Pac. 896.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered June 4, 1910, in favor of the plaintiff, granting an injunction against a proposed change in the operation of street cars. Reversed.

*James B. Howe* and *R. G. Sharpe,* for appellant.

*James Kiefer* and *Hughes, McMicken, Dovell & Ramsey,* for respondent.

CHADWICK, J.—Defendant is the owner of the street railway lines in the city of Seattle. Since 1890, a line of street railway has been maintained on Madison street, from Western avenue to Laurelshade, near Lake Washington. This line is about three and one-half miles long, and runs from the downtown district to or near Lake Washington. Madison street is one of the main street-car thoroughfares in the city. This line, under more recent contracts with the city, has passed under the control of the defendant. It is divided into two parts, route 10 covering that portion of Madison street from 100 feet west of the west line of Western avenue to Twenty-first avenue, and route 11 covering that portion of Madison street from Twenty-first avenue to Laurelshade. Each route is operated by a separate cable, although the cars are run through from one terminus to the other, excepting that at certain times of the day when traffic is heavy, extra cars are run from Western avenue to Twenty-first avenue.

Defendant is desirous of electrifying a part of its Madison street line, and to that end has received permission from the board of public works to put on electric cars from Broadway to Laurelshade, the plan being to run electric cars to Broadway, thence on Broadway to Tenth, where a transfer may be made to the James street cable, or the passenger may transfer at Broadway to the Madison street cable, making the through trip as before, with the added inconvenience of transferring from one car to another. The defendant further plans to divert a number of its cars at Fourteenth avenue, thence north

to Pike, thence down Pike to First avenue. Under the proposed plan, the patrons on Madison street beyond Broadway might reach the city by any one of the three routes. Plaintiff brought this action, asking for an injunction against defendant.

He sets up the ownership of property on Madison street beyond Fourteenth avenue; that the new plan will put an unwarranted inconvenience upon the people and unreasonably delay traffic; that a present schedule of twenty-three minutes from terminus to terminus is now maintained, whereas under the proposed plan the electric cars, switched at Fourteenth by way of Pike, will take about fifty or fifty-five minutes to go from terminus to terminus. He further alleges the impracticability of the scheme, in that the grades from Twenty-second avenue to Twenty-ninth avenue are so heavy that a sufficient number of electric cars to sustain the traffic cannot be run over that part of the route without great danger and hazard to human life. He also claims consequential damages to his property. From a decree granting a temporary injunction, defendant has appealed.

The franchise under which appellant is operating provides that the grantees, and their successors and assigns, may propel their cars either by electricity or cable traction, or partly by each. Other provisions of the franchise pertinent to our inquiry are as follows:

"The grantees, their successors and assigns, may establish and take a passenger toll or fare which shall not exceed the sum of five cents for a single continuous ride one way over any line or lines owned or controlled by the grantees, their successors or assigns, between points situated within the city limits or points on either of the extensions mentioned in section 13 hereof (when constructed or acquired), although a transfer or transfers shall be necessary, but no such transfer shall be good except upon the first connecting car at the point of transfer. . . . The grantees, their successors and assigns, shall have the right at any and all times to make reasonable rules and regulations for the management and operation of the railway lines herein provided for; provided,

that such rules or regulations shall not conflict with the laws of the state of Washington and the charter and ordinances of the city of Seattle.  .  .  .  That the said grantees, their successors or assigns, shall have the right to make such reasonable rules and regulations as to the government and operation of said road and the management and operation of their property as are not in conflict with the laws of the state of Washington or the charter and ordinances of the city of Seattle.  .  .  .  The grantees, their successors and assigns, shall keep on sale for $1 each at their main office and power stations within the city, commutation tickets entitling the purchaser to twenty-five rides.  Such tickets shall , not be transferable or entitle the owner to a transfer and the company may make such reasonable regulations in regard to the issue and use of the same as to enforce these provisions.  .  .  .  In case any existing railway is acquired and used as a part of the system hereby authorized, the operation of so much thereof as is embraced in any of the routes hereinbefore described shall be continued with only so much interruption as is actually necessary to make the same conform with the provisions of this ordinance."

We think that, under the terms of the franchise, there could be no question of the right of the appellant to electrify either route 10 or route 11, and compel a transfer of passengers at Twenty-first avenue, that being the point where the two routes come together, and the cars pass from one cable to the other; unless it be, as contended, that only one kind of motive power can be used upon the Madison street line. While the terms of the grant are probably sufficiently broad to permit the company to use either a cable or electricity or both upon a single route, our attention is directed to the fact that the city has, since the grant in question, granted many franchises for single routes each of which contains a like provision; so that, if the terms of the contract were doubtful, it would be the duty of the court, in the absence of some controlling rule of law, to follow the rule of cotemporaneous construction by the legislative body.

The case is therefore reduced to the proposition that, having a right to compel a transfer at Twenty-first avenue, can ·

the company compel a transfer at Broadway and make its electric connecting line continuous from that point to Laurel-shade; passing, as it will, over the connecting points of routes 10 and 11. The power to pass upon the expediency of the proposed plan is vested by law in the board of public works. It has granted the necessary permission, and the council has refused to interfere with its discretion. Manifestly the courts cannot, in the absence of a showing of positive abuse, interfere to thwart the deliberate judgment of the local authorities. The parties to the contract have agreed not only upon its terms, but also upon its construction; and it is too well settled to require any citation of authority that mere inconvenience will not warrant a court in usurping the rights of a municipal corporation to pass upon all questions of expediency and propriety within the limits of its jurisdiction. A change in motive power, under a franchise giving an option between steam and horse power, was passed upon by the supreme court of Illinois. It said:

"The power given by the charter was to operate the road to be constructed, with 'horse power or locomotive cars.' We read this as giving an option to the company to use either animal power or steam power, or both, upon their road, or any part of it; that this was a continuing option, which might be exercised from time to time; that after the use for a time, of either kind of power, the other kind might be substituted, as the company saw fit." *McCartney v. Chicago & Evanston R. Co.*, 112 Ill. 611.

But counsel insists that the patron has a right of continuous passage that cannot be taken away. That such changes as are contemplated may cause some inconvenience may be admitted, but the right to make them, when approved by the city, has not been questioned in the few cases we have been directed to, or have been able to find. The right of continuous passage without transfer was asserted in *People ex rel. Linton v. Brooklyn Heights R. Co.*, 69 App. Div. 549, 75 N. Y. Supp. 202. The court refused to compel the maintenance of a through service, although unhampered, as we are in

this case, by the express sanction of the controlling legislative body.    The latest expression of the courts is to be found in *Heidegger v. Metropolitan St. R. Co.* (Mo. App.), 126 S. W. 990:

"The grounds upon which petitioners seek the aid of an injunction are alleged as follows: 'Plaintiffs further state that they and each of them and other persons, as aforesaid, using said Vine Street car line have frequent and divers occasion to use the same as a continuous operated line of street railroad, and the fact that the same is and has been a continuous line of street railroad is of great advantage and benefit to their said properties, and of material financial value thereto, and that the cessation of the operation of said street car line as a continuous line upon which cars are operated from and between present termini will cause great and irreparable injury to the plaintiffs, and greatly depreciate the value and injure their said properties and render the same of materially less value and worth than the same now are.    Plaintiffs further state that the said defendant intends and threatens as aforesaid to cease the operation of its cars on said Vine Street line of railroad as a continuous and through operated car line, and that the said act of the defendant so threatened and intended to be carried out will be in violation of, and contrary to, its said franchises and rights, in that it will be a diversion of said continuous car line into two lines of street railroad, instead of one continuous line as the same now is; that is to say, said street railroad will be one line from the north, having a terminus at Thirty-First street and Woodland avenue, and another line from the south, having a terminus at or about Forty-Fourth street, and running by way of Woodland avenue to Thirty-First street, and thence west on Thirty-First to Holmes street, and thence north into the downtown district of the city, and plaintiffs allege and state that the said operation of said street car railroad will not be the operation of the same as one continuous and uninterrupted line for the continuous passage and operation of cars without necessity of change from car to car by the passengers.'  .  .  .   Under the franchise the company is bound to render efficient service, and if they fail to do so, the city can compel it to properly comply with its duty in that respect.    But whether the service on the line will depreciate in efficiency is purely problematical,  .  .  .  and we do not think that the proposed

re-routing would have the effect of breaking the continuity of the Vine Street line. It is true that there would have to be a change of cars at Thirty-First street, but the line would be continuous with the payment of a single fare. The mere fact of a change of cars would not prevent the line from being a continuous one. It would operate at most to an inconvenience which residents of the city are likely to encounter in traveling from one part of the city to another."

To the effect that a railway company can, unless prevented by contract, make schedules, create rules, and prescribe transfer points, see: *Dryden v. St. Louis Transit Co.*, 120 Mo. App. 424, 96 S. W. 1044; *Central of Georgia R. Co. v. Ashley*, 159 Ala. 145, 48 South. 981; *Kelley v. New York City R. Co.*, 192 N. Y. 97, 84 N. E. 569; *Norton v. Union R. Co.*, 58 Misc. Rep. 188, 109 N. Y. Supp. 73; *Baron v. New York City R. Co.*, 120 App. Div. 134, 105 N. Y. Supp. 258; *Hampe v. Pittsburg & B. Traction Co.*, 165 Pa. St. 468, 30 Atl. 931.

In *Atchison T. & S. F. R. Co. v. Cameron*, 66 Fed. 706, the court said:

"The law seems to be well settled that when a railroad company sells a ticket from one point to another on its own line, it simply engages to carry the passenger to his destination in the customary way, according to such reasonable rules and regulations as it has adopted for the running of its trains. . . . Railroad companies are bound, of course, to make reasonable running arrangements for the accommodation of the traveling public, but that does not mean that all passenger trains must stop at all stations, or that trains must be so scheduled and run as to enable each passenger to make a continuous trip. . . . We think, therefore, that the sale of the ticket from Gainsville to Moore did not in itself obligate the defendant company to stop the through express at the latter station, and that the sale of the ticket was not in itself an assurance that the plaintiff would be carried through to her destination on that train without change of cars."

In most of these cases, such regulations were made without express sanction, and sustained by reference to the general right of public carriers to make reasonable rules and regula-

tions for the conduct of their business.   But here we have not only a right vested in the company by its franchise to make all rules and regulations for its government and operation that are not in conflict with the laws of the state or the ordinances of the city, but the regulation has been actually endorsed by the city itself.   As against this array of authority, we are cited to the case of *Union Pac. R. Co. v. Hall*, 91 U. S. 343.   In that case the real controversy was as to whether Council Bluffs, Iowa, or Omaha, Nebraska, was the terminus of the road.   The court held, construing the Federal grant, that the company was required, so far as the public and the government are concerned, to operate its route as one connected continuous line.   It, therefore, compelled the company to haul its trains without transfer of passengers or freight across the Mississippi river.   The case is not in point, for in that case the company was acting in violation of its contract with the government.   In this case, appellant is acting in strict accord with the permission of the city government.

It is further insisted that it has been shown that the service will be inefficient by reason of a number of the electric cars being diverted by way of Pike street.   It is within the power of the city under the franchise to require a service adequate to meet the demands of the patrons, and courts will not presume that the public officers to whom that function is entrusted will neglect to discharge a duty when it is especially enjoined.

Respondent also insists that, under the following clause in the franchise:

"In case any existing railway is acquired and used as a part of the system hereby authorized, the operation of so much thereof as is embraced in any of the routes hereinbefore described shall be continued with only so much interruption as is actually necessary to make the same conform with the provisions of this ordinance;"

appellant is inhibited from running cars from Madison street to the Fourteenth avenue line.   We think the clause quoted

clearly refers to the lines not then a part of the established system and which might thereafter be acquired.

Finally, respondent raises the point that transfers could not be compelled under the new order, especially upon commutation tickets. The company is bound under the terms of its franchise to issue transfers. The issuance of transfers from one line to another is a matter wholly within the control of the city, and we cannot make an order in anticipation of a breach of the contract by the company. It will be time enough when a case arises calling for action on our part.

A number of affidavits were submitted to the trial court tending to show that, because of the heavy grades, it will be impracticable, if not impossible, to operate an electric line from Twenty-second avenue to Twenty-ninth avenue, being a part of the proposed electric line. These affidavits were met by counter affidavits on the part of the appellant. This question was no doubt considered and decided by the board of public works of the city of Seattle, whose peculiar function it is to determine all engineering problems; and although the showing made by the respondent might, in the absence of a counter showing, be sufficient to warrant the interposition of a court of equity, we think the court would be unwarranted, upon conflicting evidence, in setting up its judgment against that of the board, for it is vested with a quasi judicial authority.

For the reason that the contracting parties have agreed that the change may be made, and as it seems to be within the contract privileges of the parties, and under the authorities cited is not in law unreasonable, the judgment of the lower court is reversed, with instructions to dissolve the temporary injunction.

RUDKIN, C. J., CROW, DUNBAR, and MORRIS, JJ., concur.