[No. 13861.  *En Banc.*  February 18, 1918.]

PUGET SOUND TRACTION, LIGHT & POWER COMPANY,
*Appellant,* v. PUBLIC SERVICE COMMISSION
*et al., Respondents.*[1]

STREET RAILROADS — PASSENGER SERVICE — REGULATION.  An order by the public service commission requiring a change in street car service for the sole purpose of avoiding inconvenience of a transfer by residents of an outlying district is unwarranted where it appears that it would require a track expense of over $7,000 and an annual increase in operating expenses of $14,000 and would be unwise from the point of safety, there being no showing that the present service was inadequate; as the expense should be considered and the necessities of the public distinguished from mere convenience.

ELLIS, C. J., HOLCOMB, MAIN, and WEBSTER, JJ., dissenting.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered October 24, 1916, sustaining an order of the public service commis-

[1]Reported in 170 Pac. 1014.

sion regulating a service schedule on appellant's railway lines, after a hearing before the court. Reversed.

*James B. Howe, Hugh A. Tait,* and *Edgar L. Crider,* for appellant.

*The Attorney General* and *Hance H. Cleland, Assistant,* and *Adair Rembert,* for respondents.

MORRIS, J.—Appeal from a judgment of the superior court affirming an order of the public service commission affecting the service on appellant's Twenty-third avenue line, in the city of Seattle. This line is a cross-town line, running north and south between the Lake Washington canal on the north and Jackson street on the south. It crosses or intersects east and west lines of the appellant at Jackson street, Yesler Way, East Union street, East Cherry street and Madison street. North of Madison street, extending south from the canal, is a residential section known as Interlaken.

In November, 1913, a complaint was filed with the public service commission on behalf of the residents of this district, reciting that the service furnished by the Puget Sound Traction, Light & Power company was inadequate and insufficient on its Twenty-third avenue line, in that a large portion of the public patronizing this line had no occasion to go south of Madison street save for the purposes of transportation to and from the business section of the city; that the shortest and most convenient route for this traffic for the residents of the Interlaken district is south on the Twenty-third avenue line to Madison street, thence by transfer to the Madison street line, along and over which they would be brought to the business section of the city; that this transfer involves delay and inconvenience which could be eliminated by diverting the Twenty-third avenue

cars at Madison street and routing them from that point west along the Madison street line into the city, thus giving a direct service instead of a transfer service. Citation was issued to the traction company, which appeared. A hearing was had and, on November 11, 1914, the commission entered its order finding that the service on the Twenty-third avenue line as then provided by transfer at Madison street was adequate and sufficient, and enabled the complainants to reach the business section of the city without undue delay or material inconvenience, and, so finding, dismissed the complaint. In February, 1915, the commission vacated the order of November 11, 1914, and granted a rehearing, and on December 27, 1915, the commission entered the following order:

"It is ordered that the respondent company, within sixty days after the date of the service of this order, route the cars on Twenty-third avenue North, between the hours of seven and nine in the morning and five and seven in the evening, down Madison street to the business section of the city, said cars to be operated at the same intervals as now operated by the Twenty-third avenue line north of Madison street; that respondent company operate between Madison street and Jackson street, during said period of time, a shuttle service."

This is the order complained of. The finding upon which this order is based recites, as the only inadequacy of service found by the commission, the wait incidental to the transfer at Madison street. No finding is made that the company did not operate a sufficient number of cars on the Twenty-third avenue line to take care of the traffic, or that the service was inadequate in any respect other than in the transfer at Madison street. The only question we have to determine is the reasonableness of this order.

In opposition to the making of this order, it is shown on behalf of the traction company that it will necessitate an expense of $7,100 to make the necessary track changes at Madison street. The complainants say this figure is excessive. (This record was made in January, 1914.) It is also shown that it will necessitate an additional operating expense of from $5,000 a year, admitted by the complainants, to $19,000 a year, claimed by the traction company. It is also shown that the grades on Madison street over which the re-routed Twenty-third avenue cars would pass in complying with this order are such between certain streets that cars must have a required clearance to insure safety of operation; that this condition would become more aggravated with the increased service on Madison street as the districts now served by the lines operated upon that street become more densely populated, and that adding an additional service route would be unwise from the standpoint of safety. The effect would also be to disturb and slow up an already congested down-town condition, thus detrimentally affecting service on other lines.

The Twenty-third avenue line is operated at a loss, the cost being fifteen cents per car mile and the revenue 11 cents per car mile. The entire street car system of appellants, during the years 1913 and 1914, earned a net return of less than four per cent. It is contended by appellants that the showing for the subsequent years is approximately two and three-fourths per cent. Whether or not these are the true figures, it is probably less than the four per cent of the prior years.

Viewing these facts, it seems to us that the order complained of is unreasonable. The only reason given is the inconvenience of the patrons of the Twenty-third avenue line north of Madison street. Residents of out-

lying districts of large cities must anticipate some inconvenience in reaching the business section of the city. Every cross-town line cannot be made a trunk line giving direct and quick service. Residents of such cities are likely to encounter some inconvenience in traveling from one portion of the city to another, and the mere change of cars at some transfer point is not such an inconvenience as will necessitate a change of operative conditions under the circumstances here shown.

A similar case is that of *Heidigger v. Metropolitan St. R. Co.*, 142 Mo. App. 335, 126 S. W. 990, where the street car company sought to change its service in a given locality from a continuous one-line service to a service requiring a change of cars. The change was objected to upon the same grounds as here urged. The court sustained the right to make the change on the ground that the inconvenience to the traveling public was of itself insufficient to defeat the proposed change.

In *McGilvra v. Seattle Elec. Company*, 61 Wash. 38, 111 Pac. 896, Ann. Cas. 1912B 1020, the principle here involved, so far as it affects the right of a street car company to establish transfers, was before the court. It was there held that such rights exist though it might cause some inconvenience to the traveling public, quoting from the *Heidigger* case with approval and citing *People ex rel. Linton v. Brooklyn Heights R. Co.*, 69 App. Div. 549, 75 N. Y. Supp. 202. From one aspect of the case it would seem that the *McGilvra* case and the principle upon which it rests are controlling as against the reasonableness of this order. Considering the case, however, in all its phases, and having regard to the power delegated to the public service commission, the unreasonableness of the order is apparent. In considering the reasonableness of an order of the public service commission directing an additional service on the part of a public service corporation consideration

must be given both to the carrier and the public. The carrier is entitled to a reasonable compensation for the services; the public is entitled to a service that will, within reasonable limits, meet its needs, subject on the part of the carrier to the qualification that, having devoted its property to a public use, it must accept all reasonable conditions of such use and, to a certain extent, subordinate its interests to that of the public it serves. *Puget Sound Elec. R. v. Railroad Commission,* 65 Wash. 75, 117 Pac. 739, Ann. Cas. 1913B 763. The rights of the carrier are at all times subject to the power of the state to prescribe rules and regulations the effect of which will bring a fair remuneration to the carrier for the required service and secure substantial service to the public in like cases.

"But, broad as is the power of regulation, the state does not enjoy the freedom of an owner. The fact that the property is devoted to a public use on certain terms does not justify the requirement that it shall be devoted to other public purposes, or to the same use on other terms, or the imposition of restrictions that are not reasonably concerned with the proper conduct of the business according to the undertaking which the carrier has expressly or impliedly assumed. . . . The public interest cannot be invoked as a justification for demands which pass the limits of reasonable protection and seek to impose upon the carrier and its property burdens that are not incident to its engagement." *Northern Pac. R. Co. v. North Dakota,* 236 U. S. 585.

There is a broad distinction between a service that is required to meet the needs of the public or of a given community, and requiring a service to satisfy the convenience of a community. In the first instance, the carrier, by reason of its public character and the rights it derives from the public, must subject itself to all reasonable necessities of public service and, for this purpose, must subordinate its interests to the necessities of

the public.   In the second instance, the carrier cannot be required to satisfy the convenience of the public at any considerable loss to itself; especially when, as here, the service rendered is adequate for the needs of the situation, but, in some respects, is not as convenient as it might be.

While the mere incurring of a pecuniary loss in carrying out an order to furnish certain facilities in the line of the carrier's duty does not of itself give rise to the conclusion of unreasonableness, the fact, however, that the furnishing of the required facilities will

"occasion an incidental pecuniary loss is an important criteria to be taken into view in determining the reasonableness of the order . . . as the duty to furnish necessary facilities is coterminous with the powers of the corporation, the obligation to discharge that duty must be considered in connection with the nature and productiveness of the corporate business as a whole, the character of the services required, and the public need for its performance." *Atlantic Coast Line v. North Carolina Corporation Commission,* 206 U. S. 1, 27.

These observations lead us to the conclusion that the order complained of is, under all the affecting circumstances, unreasonable.   The judgment sustaining the same is reversed.

MOUNT, PARKER, CHADWICK, and FULLERTON, JJ., concur.

HOLCOMB, J., dissents.

WEBSTER, J. (dissenting)—The superior facilities of the public service commission for determining matters of this character should entitle its orders to great weight, and the courts should not overturn them except in clear cases.   In my judgment, the evidence does not warrant the conclusion that the order in question is unreasonable; I therefore dissent.

ELLIS, C. J., and MAIN, J., concur with WEBSTER, J.