the competition or to refuse to sign the contract. Had the defendant, with knowledge of Miss Irwin-Martin's conduct in this behalf, promised to pay her the commission, or by some subsequent dealing with her inconsistent with its right to repudiate the agreement to pay her a commission, shown its intention to waive her violation of duty, the learned justice's contention would have been correct. But there was nothing in the acts or dealings of the defendant that showed such an intention.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.

---

(81 Misc. Rep. 207.)

### GOODMAN v. NEW YORK RYS. CO.

(Supreme Court, Appellate Term, First Department. June 24, 1913.)

1. CARRIERS (§ 20*)—EXCESSIVE CHARGES—DENIAL OF TRANSFER.

Under Laws 1910, c. 480, § 49, subd. 7, requiring any street surface railroad corporation to give passengers a transfer entitling them to a continuous trip to any point or portion of any railroad leased by it, and prescribing a penalty for violations thereof, and Laws 1910, c. 481, § 59, providing a penalty for overcharges by railroad corporations, unless made through inadvertence or mistake, and section 181, prohibiting any street surface railroad corporation charging more than five cents for a continuous ride from any point on its road, or any road, line, or branch operated by it, to any other point thereof within the limits of any city or village, assuming that it was reasonable for a street railway to run short service cars and to require through passengers accidentally or intentionally boarding such cars to change at the short terminus to through cars, and that it was also reasonable to require passengers desiring transfers to demand them at the time of paying their fare, a passenger was entitled to recover the penalty for the denial of a transfer from a short service car to a through car, although not demanded when he paid his fare, where the service car bore no sign, and the conductor did not notify passengers that it was a short service car.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 33–49, 133, 927; Dec. Dig. § 20.*]

2. CARRIERS (§ 20*)—EXCESSIVE CHARGES—DENIAL OF TRANSFER.

The placing of the sign "Astor Place" on a street car, without adding the word "only," was not a sufficient notice to passengers that it went only to Astor Place, and not to the end of the line, to relieve the company of its liability for a penalty for failure to give a passenger a transfer to a through car.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 33–49, 133, 927; Dec. Dig. § 20.*]

3. PLEADING (§ 376*)—EVIDENCE—ADMISSIONS.

In an action against a street railway company, defendant's counsel, at the opening of the case, remarked that the court would take judicial notice that defendant railway company ran down Broadway, as well as other avenues; that being a matter of common knowledge. He also made a number of concessions, but after some disagreement with plaintiff's counsel remarked that he presumed "those concessions" would be removed from the record; the court saying that there was nothing in the case up to that time, except that the jury was ready to hear the evidence. There was nothing further to indicate that defendant's counsel expected plaintiff to prove that defendant operated the line on Broad-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

way. *Held*, that plaintiff was not required to prove defendant's control or operation of such line; the statement of defendant's counsel in regard to the line not being one of the "concessions" which were subsequently withdrawn.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 1225–1227; Dec. Dig. § 376.*]

Appeal from Municipal Court, Borough of Manhattan, First District.

Action by Jacob Goodman against the New York Railways Company. From a judgment for defendant after a trial before the court without a jury, plaintiff appeals. Reversed, and new trial ordered.

Argued June term, 1913, before SEABURY, PAGE, and BIJUR, JJ.

L. J. Morrison, of New York City, for appellant.

James L. Quackenbush, of New York City (Wm. J. Shields, of Buffalo, of counsel), for respondent.

BIJUR, J.   Plaintiff sued to recover $50, penalty prescribed by Laws 1910, c. 481, §§ 59 and 181, and also Laws 1910, c. 480, § 49, subd. 7. The two enactments first recited forbid an overcharge of fare, or the charging of more than one fare for a continuous ride over the main line of any road or any branch or extension thereof. The last-named enactment requires the giving of a transfer.

Plaintiff boarded a "Fourth & Madison Avenue" open car, southbound, at Forty-Second street shortly before 10 o'clock of a drizzly and cloudy night; his destination being Brooklyn Bridge. As the car turned into Astor Place, he asked for a transfer, which was refused, though at least four other persons on the car, who asked for transfers at the same time and place, received them. They proceeded south on Broadway with their transfers. Plaintiff did the same, but had to pay the additional fare.

As to the question of transfers, appellant's point seems to be, not that the regulation, of which he was aware, that transfers should be asked for at the time of paying the cash fare, is unreasonable, but that it is not a uniform rule, and, therefore, unfair and unreasonable on that account. The conductor admitted that he had discretion to give transfers at Astor Place, and explained his giving of them to others because "they looked like strangers." There is much force in plaintiff's claim; but it need not, in my opinion, be determined in this case.

[1] I shall assume that it is reasonable operation for a street railway to run "short service" cars, and to require through passengers who accidentally or intentionally board such cars to change at the "short" terminus into a through car. It may also be accepted as a reasonable regulation that passengers desiring transfers shall demand them at the time they pay their fare. The real question, then, is whether this car is to be properly classed as a "short service car" boarded voluntarily by plaintiff, when he was at liberty to wait for and take a through car on the same line. Plaintiff testifies positively that there was no sign illuminated bearing the words "Astor Place" on the car in question, and that the only inscription that was illuminated was "4th

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

& Madison Ave." In this respect he is confirmed by one or two of his companions. The conductor does not even claim to have notified plaintiff, or any of the passengers, that it was an Astor Place or any. other form of "short service car" when they entered or when they paid their fare. He does testify that the car bore the inscription "Astor Place" and that that was illuminated by "an electric bulb." It is significant that neither plaintiff nor his three companions saw the sign, and that the conductor promptly gave four transfers to four other passengers. I think that the weight of evidence is overwhelmingly to the effect that there was no such lighted sign on the car at that time; and there is no claim that the conductor notified any of the passengers that it was an Astor Place car. See opinion of Scott, Laughlin, and Clarke, JJ., in Baron v. N. Y. Rys. Co., 120 App. Div. 134, 105 N. Y. Supp. 258.

[2] Moreover, I do not believe that the mere placing of a sign reading "Astor Place" on a Fourth & Madison Avenue car is sufficient notice to a passenger that it is a "short service car." The mere words "Astor Place," without the usually added word "only," do not, to my mind, apprise an intending passenger that the car is a "short service" one. Plaintiff boarding a "4th & Madison Ave." car, under the circumstances detailed, was entitled to believe that it would carry him to Brooklyn Bridge, his intended destination. There was, as he himself has testified, no reason why he, at that time, should ask for a transfer; and when, without any notice, the car turned into Astor Place, he was entitled to demand and receive the transfer to continue on the same line, which he demanded, and its refusal compelled him to pay an overcharge, which was made deliberately in violation of the statute.

[3] Some point is made by respondent of the fact that there was no proof that the Broadway line was controlled or operated by the defendant. It is true that the defendant's counsel, after various concessions had been made at the opening of the case and some disagreement appeared between counsel, remarked:

"I presume that all those concessions will be removed from the record."

And the court said:

"Then there is nothing in this case up to this time, except that the jury is ready to hear the evidence."

The jury was subsequently waived. But the statement about the Broadway line was not a concession. Defendant's counsel, at the opening of the case, said:

"Your honor will take judicial notice of the fact that the New York City Railways Company run down Broadway, as well as Park Avenue and other avenues; that is a matter of common knowledge."

There is nothing in the subsequent proceedings or the remarks of the counsel or the court to indicate that defendant's counsel had changed his position in this regard, and it would be unfair to charge plaintiff's counsel, under these circumstances, with the need of proving the control or operation of the Broadway line by the defendant.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.