## Francis Kirsch, Appellant, v. East St. Louis & Suburban Railway Company, Appellee.

1. CARRIERS—*duty to carry passenger to destination in one continuous passage.* When one pays a fare to an interurban company running between two cities, a contractual relation is created, and it is the duty of the carrier to convey him to his destination in one continuous passage.

2. CARRIERS—*when passenger on interurban car not refused continuous passage to destination.* A passenger on an interurban car running over a river between two cities is not refused a continuous passage to the terminal city, where, owing to the "bunching" of three cars, because of an accident, in the city in which passage is taken, the conductor announces, after the car has gone some distance, in obedience to an order of the superintendent given to relieve the congestion and to facilitate travel, that it will go no further and requests the passenger to take a transfer and get on the car following in close proximity, which he refuses to do, and remains on the car until it rounds a loop and starts on its return trip.

Appeal from the City Court of East St. Louis; the Hon. H. L. BROWNING, Judge, presiding. Heard in this court at the October term, 1917. Affirmed. Opinion filed April 5, 1918.

EDGAR P. HOLLY, for appellant.

BARTHEL, FARMER & KLINGEL, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

Appellee, East St. Louis & Suburban Railway Company, operates a system of street and interurban railways in the City of East St. Louis and territory adjacent thereto. Over one of its lines it runs through cars between the City of Belleville, Illinois and the City of St. Louis, Missouri. These cars enter East St. Louis at its eastern limits and go westward on

State street to Tenth street, southward on Tenth street to Missouri avenue, westward on Missouri avenue to Collinsville avenue, southward on Collinsville avenue to Broadway and then westward on Broadway to St. Louis via Eads bridge. Whenever due to accident or delay the cars would become bunched or grouped together, appellee's superintendent of transportation would respace the cars and restore them to schedule time by ordering one or more of them turned back before reaching its regular terminus. One of the places where St. Louis bound cars which had become bunched were turned back was known as the "loop" in East St. Louis. This loop was made by the car on its arrival at Collinsville avenue continuing westward one block on Missouri avenue to Third street, southward on Third street to Broadway, eastward on Broadway to Collinsville avenue, and northward on Collinsville avenue, back to the intersection on Missouri avenue. The fare on all of appellee's lines between points in East St. Louis was five cents, but the fare from points in East St. Louis to St. Louis was ten cents. This extra charge of five cents was strictly a bridge fare. All St. Louis passengers upon payment of their ten-cent fare were given a bridge ticket, good for the entire day on which it was issued. If a passenger had occasion to change cars before reaching the bridge he was given a transfer, which together with this bridge ticket would take him over the bridge without additional charge.

On the evening of February 26, 1917, appellant boarded one of appellee's cars on State street in East St. Louis. Upon informing the conductor he wanted to go to St. Louis and paying his fare of ten cents, he was given a bridge ticket. On account of an accident, three of appellee's St. Louis bound cars had become bunched and were traveling close together. Appellant boarded the middle one of these cars. The conductor of this particular car had received orders

to turn at the loop, before appellant became a passenger, but did not so inform appellant or the other passengers until the car reached the beginning of the loop at Collinsville avenue. At this point the conductor announced that the car would not go to St. Louis and requested all St. Louis passengers including appellant to take a transfer from him and board the Belleville-St. Louis car which was following. This appellant refused to do and insisted upon being carried to St. Louis on the car which he had originally boarded. The conductor and the acting road supervisor, who was on the car, tried again to persuade him to take a transfer when the car reached Third street, but he again refused. At this point the other St. Louis bound car was within 25 or 30 feet. He remained on the car until it had rounded the loop on its way back to Belleville, and then got off without accepting a transfer.

Appellant brought this suit to recover damages for appellee's alleged breach of duty to carry him to St. Louis in one continuous passage. The declaration consists of two counts, in both of which the gravamen of the action consists of the alleged failure of appellee to carry appellant to St. Louis in one continuous passage. Appellee pleaded the general issue. At the close of all the evidence the court, on motion of appellee, peremptorily instructed the jury to find it not guilty. Judgment was entered on the verdict, and from this judgment the plaintiff below appeals.

The facts in this case are undisputed. Therefore, if under the law applicable to these facts, appellee cannot be held liable to appellant, then the trial court committed no error by instructing the jury to find for the former. When appellant paid his fare a contractual relation between him and appellee was created, and it became appellee's duty to convey him to his destination in one continuous passage. We do not understand however that the words "one continuous passage" have ever been held to mean without any

delay or without any change of cars or trains. The case of *Churchill v. Chicago & A. R. Co.*, 67 Ill. 390, relied upon by appellant, does not so hold. The only question presented in that case was whether a person has a right to ride on a stop-over ticket after the expiration of the time limited therein. What was said by the court with reference to a passenger's right to be carried in one continuous passage was not necessary to a decision of that question. From the language there used we do not understand the court intended to lay down the doctrine that a passenger has the right to be carried without change of cars, but that he has a right to be carried without unreasonable delay. "The words 'continuous passage' in a ticket have been held to mean the continuous passage of the person to whom the ticket was issued, and not that of the train; they do not import that he shall be carried without any stop or change of cars." (10 Corpus Juris 808.) None of the authorities referred to by counsel or which we have consulted appear to go to the extent of holding a carrier must run the same train or car upon which he enters on his journey through to the passenger's destination, but rather that it must carry him to his destination without unreasonable delay. Appellant was offered a transfer to another of appellee's cars, which was within 25 or 30 feet, and which would have carried him to St. Louis without any appreciable delay.

The case of *Dryden v. St. Louis Transit Co.*, 120 Mo. App. 424, was similar in nearly every detail to the one at bar. In that case plaintiff entered a car of the defendant street car company at Twelfth and Market streets in the City of St. Louis, Missouri, intending to go to Broadway and Lucas avenue. When the car reached Broadway and Olive street the conductor informed the passengers that the car would not go further on Broadway, but would proceed east

on Olive street and thence by several other streets proceed on its trip to the southwestern part of the city and requested the passengers to take a car following in close proximity, which was going to Broadway and Lucas avenue. "The plaintiff refused to change cars. The conductor asked him to take a transfer and board the next car, which he refused to do. The plaintiff was not informed that he would not be carried to his destination until the car reached Broadway, and stated that if he had known the car was not going to his place of destination before he boarded it he would have waited and taken another car; that his fare of five cents was not tendered back to him. The evidence on the part of defendant showed that there had been a delay of 15 minutes, caused by a 'jammed switch,' resulting in a blockade and disarrangement of the spacing of the cars on this line. The superintendent of the line testified that in order to restore the proper spacing of the cars, and to make up the time lost by the car, caused by the blockade, he ordered the conductor to make the loop at Fourth and Pine streets instead of Broadway and Lucas." There were two counts in that declaration, the first of which charged a breach of the contract to carry plaintiff to his destination and the second alleged a violation of the terms of an ordinance of the city which provided, in effect, that cars should not be turned from their established routing except in case of unavoidable accident or when about to be turned in according to schedule at a car shed. In passing upon the plaintiff's right to recover under the first count, the court said: "That there was no substantial breach of defendant's contract to carry plaintiff to his destination, we think is clearly shown by plaintiff's own evidence. At Broadway, the plaintiff was offered a transfer to another of defendant's cars (at hand) to carry him to his destination, four blocks north of where he was. The mere inconvenience

to plaintiff in getting off one car to take passage on another to be carried immediately to his destination was not an actionable breach of defendant's contract to carry him." And in relation to the count upon the ordinance the court held there was no violation of the terms of the ordinance, saying: "As shown by the evidence, it was necessary to turn the car on which plaintiff was a passenger from its regular route, for the purpose of making up time that had been unavoidably lost, to restore it to its schedule time, and to give it the usual space ahead of the car that was following. We think this was not only a reasonable diversion, but a necessary one, for the accommodation of the traveling public." We have quoted from this case somewhat at length not only because it was so similar to the case we have before us but also for the reason the views expressed by the court in the opinion filed therein correspond with our construction of the law governing this case.

A car had been derailed on this line earlier in the evening and the traffic delayed. The car upon which appellant was a passenger had been ordered to turn back for the purpose of making up the time which had been thus unavoidably lost, and this was done for the accommodation of the traveling public. Appellant was not appreciably delayed or inconvenienced nor was he subjected to any indignity. The technical right to be carried through to his destination without delay and without change of cars upon which appellant insists must give way to the practical necessity of operating the car line for the benefit and convenience of the public at large, and where, as in this case, a passenger who was required to change cars before reaching his destination, has incurred no appreciable delay or inconvenience, he has suffered no damages for which he should be permitted to recover a judgment against the carrying company.

The court below properly instructed the jury to find

a verdict in favor of appellee and the judgment against appellant based thereon is affirmed.

*Affirmed.*